STATE OF CONNECTICUT *v.* ROBERT McNEIL

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 6-27467

Argued September 13—decided October 22, 1965

*Frank J. Mongillo,* of New Haven, for the appellant (defendant).

*Joseph B. Clark,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. The defendant, in a trial to the court, was convicted of the crime of indecent exposure in violation of § 53-220 of the General Statutes. He has appealed from the judgment on the ground that the court erred in concluding that upon all the evidence he was guilty of the crime charged beyond a reasonable doubt.

Briefly stated, the defendant's alleged misconduct occurred on September 26, 1964, under these circumstances: The complaining witnesses, sisters, whom we shall refer to as Julia and Elizabeth, ages fourteen and twelve respectively, were walking along a dirt road, between 5:30 and 6 p.m., in College Woods Park, formerly known as Cold Springs Park, in New Haven. Light and visibility were good. Julia observed a man standing near a tree some fifteen to twenty-five feet away from the dirt road. His private parts were exposed. Julia told her sister what she had observed. The sisters continued along the dirt road for about sixty yards; they then decided to return home along the same route. The man was still in the same place. When the girls reached a point approximately opposite the man, with no obstructions between them, they observed that the man's pants were down. Elizabeth became frightened and screamed. Thereupon the man commenced to pull up his pants. Elizabeth promptly reported the incident to Officer Patten, who was asssigned to park duty. The next day, Sunday, at about 4:40 p.m., Officer Patten saw the defendant operating his automobile in the vicinity of College Woods Park. He ordered him to stop. While another officer remained with the defendant, Officer Patten

left and returned a short time later, accompanied by the young sisters. They identified the defendant as the man they had seen exposed at the park. On the witness stand, the girls unhesitatingly pointed to the defendant as the man they had seen in the park.

The nature of the offense with which the defendant is charged was recently considered and defined by us in *State* v. *Sousa,* 2 Conn. Cir. Ct. 452, 454, and *State* v. *Morrison,* 2 Conn. Cir. Ct. 443. See 67 C.J.S. 25, Obscenity, § 5; note, 94 A.L.R.2d 1353, supplementing note, 93 A.L.R. 996. Therefore we deem it unnecessary at this time to restate the elements of the crime of indecent exposure.

The defendant argued in his brief and before us that identification of him by the complaining witnesses was open to question. "The identification of accused as the person who committed the crime is a question for . . . the court . . . unless the evidence of identification is incredible as a matter of law. This rule applies where the defense is an alibi." 23A C.J.S. 276, Criminal Law, § 1126; see *State* v. *Bill,* 146 Conn. 693, 696; *State* v. *Coulombe,* 143 Conn. 604, 607; 3 Wharton, Criminal Evidence (12th Ed.) p. 446 n.8. The defendant also claimed an alibi. He attempted, through his own testimony and that of others, to account for his activities and whereabouts from the time he left his employment on September 26, 1964, at about 5:10 p.m. until he was stopped by Officer Patten the following afternoon in the vicinity of College Woods Park. The court chose to disbelieve the alibi offered by the defendant. "The trial court had the opportunity of observing the witnesses upon the stand and the manner in which they responded under direct and cross-examination. It was satisfied with the identification of the defendant by the complaining . . . [witnesses] and disbelieved entirely the attempted

alibi . . . [during the crucial period]. That was its province and we cannot disturb its conclusion." *State* v. *Bill, supra.* That the trial court chose to believe the complaining witnesses rather than the defendant and those who testified for him furnishes no basis for reversal.

A final claim made by the defendant is that the trial court committed reversible error in allowing into evidence the testimony of Detective Tuttle regarding certain statements made to him by the defendant during a period of interrogation at police headquarters. The defendant insists that he was not advised of his basic constitutional rights and hence the conviction cannot stand. He asserts that there "seems to be little doubt but that this case is squarely within the realm" of such cases as *Massiah* v. *United States,* 377 U.S. 201; *Escobedo* v. *Illinois,* 378 U.S. 478; *State* v. *Mendes,* 210 A.2d 50 (R.I.); *People* v. *Dorado,* 62 Cal. 2d 338, 347.[1] We disagree. The cases cited by the defendant are factually dis-

---

[1] In *Massiah,* the defendant was indicted for violating federal narcotic laws. He retained counsel, pleaded not guilty, and was released on bail. Colson, a codefendant, decided to cooperate with the police and allowed Murphy, a federal agent, to instal a radio transmitter in the car. Murphy, thus enabled to overhear incriminating statements made by Massiah in a subsequent conversation with Colson, testified to these statements at trial. The United States Supreme Court reversed the conviction upon the ground that introduction in a federal court of incriminating statements elicited by federal agents after indictment and in the absence of counsel violated the fifth and sixth amendments. But the real problem facing the court in *Massiah* was the permissible extent of governmental deceit inherent in undercover work and the use of informers. Thus, the basic issue involved in *Massiah* turned on the question whether law enforcement officials may seek evidence from a defendant's own mouth when he is unaware that he is talking to the officials and is providing them with evidence which will help to convict him.

In *Escobedo,* the defendant had been arrested and brought to police headquarters for questioning about the murder of his brother-in-law. Throughout the interrogation, his frequent requests to call his attorney were denied. After several hours of interrogation, Escobedo made certain statements which implicated him in a murder. It was upon the strength of his confession that he was convicted

tinguishable from the case at bar. In the first place, there is testimony in the record from which the court could conclude that the defendant was in fact advised of his basic rights.[2] In the second place, Detective Tuttle was called as a rebuttal witness by the state merely to refute the defendant's claimed alibi. Unlike the cases cited in the defendant's brief, his conviction was not founded upon a confession nor upon admissions; indeed, he was persistent throughout in his denial of the commission of the offense. We have made a careful examination of the cases cited by the defendant; we fail to comprehend their applicability to the case at bar.

In our opinion the record, considered in its entirety, contains testimony of that clear and convincing quality which was sufficient to establish the guilt of the defendant beyond a reasonable doubt. The judgment founded thereon cannot be disturbed.

There is no error.

In this opinion PRUYN and LEVINE, Js., concurred.

---

of first degree murder. The aggravating facts with which the court was concerned in *Escobedo* are not present in the present case. In reversing the conviction, the United States Supreme Court purported to limit its holding to the particular facts of the case.

In *Mendes,* a prosecution for driving so as to endanger, death resulting, the court held that the admission of the defendant's incriminating statements elicited during police interrogation about the fatal accident may not be used against him. There was no evidence or claim that the defendant was advised of his basic rights.

In *Dorado,* the court held (p. 347) that it was reversible error to allow into evidence defendant's confession of murder where "[t]he record shows that the authorities did not in any manner warn defendant of his 'absolute constitutional right to remain silent.'"

[2] "Q.—I [Mr. Fitzgerald, trial counsel] am going to ask this question of you [Detective Tuttle]. Did you warn him [the defendant] before you asked him questions, sir? Did you warn him and tell him any statement that he might make would be used against him? A.—Yes, I did. . . . The court: You informed him of his rights, Officer [Detective Tuttle]? A.—Yes, sir."