766 So.2d 468 (2000)
Robert A. BURKS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-2980.
District Court of Appeal of Florida, Fifth District.
September 18, 2000.
James B. Gibson, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Robert Burks appeals his conviction for a lewd and lascivious act in the presence of a child. We reverse.
The year 1998 was not a good year for Burks. In that year, his house burned down, his mother died, and his girlfriend was murdered by her grandson. These most unfortunate events exacerbated Burks' already serious problem with alcohol. To add to these calamities, later in the same year Burks was charged with and convicted of a lewd and lascivious act in the presence of a child and sentenced to 35 months in prison. Our duty is to review the latest of Burks' misfortunes and decide whether the trial court erred when it denied Burks' motion for judgment of acquittal. We find, based on the unique facts and circumstances of this particular case, that the motion should have been granted.
*469 On August 29, 1998, Burks was living on a remote five acre tract of land in a mobile home situated on a dirt road in rural Geneva, Florida. According to the transcript of the sentencing hearing, Burks is hearing impaired and this, along with his alcoholism, led him to feel more secluded on his property than he actually was. This portion of the record also reveals that Burks was sitting in his Jacuzzi, apparently naked, drinking (the record does not reflect whether he was intoxicated), when he decided to get out and check on his garden hose. The evidence presented at trial reveals that fourteen-year-old Jennifer and her sixteen-year-old girlfriend, Lindsey, who had been riding their all terrain vehicles up and down little dirt roads all day, passed Burks' trailer which is down the road from the cabins owned by Jennifer's mother's fiancee, Butch. As they passed by, Jennifer noticed that Burks was completely naked. Lindsay did not see Burks, so the two made a U-turn and went by Burks again. In fact, the two girls made several trips past Burks. There is no evidence that Burks was aware of their comings and goings.
Jennifer and Lindsey decided to go back to Butch's cabin to report what they had seen. Incredibly, Butch directed Jennifer's mother, Carolyn, to take Jennifer the younger of the two girlsback to see the sight. Carolyn and Jennifer got on an ATV and the two returned to the dirt road running along Burks' property. Driving "pretty slow," they spied Burks just as he stepped from behind his trailer. Burks stopped and put his hands on his hips. The prosecutor argued to the jury that Burks' act of standing in the open with his hands on his hips constituted the lewd and lascivious act which formed the basis of the charge. Carolyn and Jennifer returned to Butch and reported what they had seen. We find the next event to occur to be even more incredible: Butch instructed Jennifer and Lindseythe two minorsto go back to Burks' area and ride up and down the road to keep the naked Burks outside until the police arrived. The girls complied. Carolyn apparently had decided, however, to confront Burks, so all three females arrived at Burks' property simultaneously. Burks was behind his trailer, but unfortunately came out when Carolyn started yelling. The girls left to get Butch.
Carolyn testified that she asked Burks what he was doing and he responded, "I'm sorry, ma'am, I didn't realize anybody was out here." Carolyn said, "Bullshit. I've been up and down the road all day." She testified that she stood there calling Burks names, hoping the police would get there. Unfortunately for Burks, the situation grew progressively worse when Butch arrived at the scene, entered onto Burks' property, and confronted the naked man at which time Burks said, "I'm sorry, I'm just airing out." At that point, Butch hit the hapless Burks, knocking him to the ground. Butch testified that he "pounded on him pretty seriously." Burks, bleeding, was able to get away and run into his house. The police arrived about five minutes later.
Burks was charged with one count of lewd and lascivious act in the presence of a child, a second degree felony, for exposing himself to Jennifer. Astonishingly (we use this word to avoid being repetitive but incredible and other similar superlatives may aptly fit here as well), Butch was not charged with anything.
At the conclusion of the State's case, defense counsel moved for a judgment of acquittal on the basis that there had been no evidence of a lewd or lascivious act. The State countered that the evidence of intent was sufficient to go to the jury to decide whether Burks had exposed himself in a wicked, lustful, unchaste, licentious manner. The trial judge, Judge Martin Budnick, noted that the State's case was "weak, and that's an understatement," but decided to let the case go to the jury. After the jury retired to deliberate, defense counsel renewed his objection and moved for a mistrial. The court denied *470 the motion. The jury found Burks guilty as charged. Defense counsel again unsuccessfully moved for judgment of acquittal.
Sentencing occurred before Judge O.H. Eaton, who stated that he was not certain whether he would have sent the case to the jury if he had been the trial judge. Before sentencing, two psychological exams had been performed on Burks, neither of which revealed any sexual deviancy or perversions. Nevertheless, Judge Eaton noted that since the jury had found Burks guilty, the best he could do was to sentence Burks to the absolute minimum35 months DOC. Sentence was imposed accordingly.
Based upon his act of stepping from behind his trailer and standing with his hands on his hips in the view of the fourteen-year-old, Burks was charged with the commission of a lewd or lascivious act in the presence of a minor. Burks argues that the evidence was insufficient as a matter of law to sustain the conviction. We conclude that under the facts of this case, Burks is correct.
Section 800.04(4), Florida Statutes, entitled "Lewd, lascivious, or indecent assault or act upon or in presence of child," provides in pertinent part:
A person who:
* * *
(4) Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years, without committing the crime of sexual battery, commits a felony of the second degree....
The term "lewd or lascivious" is not defined in the statutes. In Egal v. State, 469 So.2d 196, 197 (Fla. 2d DCA), review denied, 476 So.2d 673 (Fla.1985), the appellate court discussed the term:
The term "lewd and lascivious" has been referred to as generally and usually involving "an unlawful indulgence in lust, eager for sexual indulgence." Chesebrough v. State, 255 So.2d 675, 678 (Fla. 1971), cert. denied, 406 U.S. 976, 92 S.Ct. 2427, 32 L.Ed.2d 676 (1972); Payne v. State, 463 So.2d 271 (Fla. 2d DCA 1984). That term has also been said to connote "wicked, lustful, unchaste, licentious, or sensual design on the part of the perpetrator." Chesebrough, 255 So.2d at 677, quoting from Boles v. State, 158 Fla. 220, 27 So.2d 293, 294 (1946); Goodmakers v. State, 450 So.2d 888, 891 (Fla. 2d DCA 1984). The term "imports more than a negligent disregard of the decent proprieties and consideration due to others." McKinley v. State, 33 Okl. Cr. 434, 244 P. 208 (1926), cited by the Florida Supreme Court in Chesebrough for the foregoing general, usual meaning. As indicated in Chesebrough, which declared section 800.04 constitutional, the legislature has not defined "lewd and lascivious," and it is for the judiciary to apply those words based upon common understanding of them. Chesebrough also noted that "[i]t would be, of course, difficult or impossible to detail in a statute book all the acts which would constitute lewd and lascivious behavior...." 255 So.2d at 678, quoting from Buchanan v. State, 111 So.2d 51 (Fla. 1st DCA 1959). That task would, of course, be no less difficult or impossible in a court opinion. Therefore, a determination of the precise meaning of the words "lewd and lascivious" in particular contexts must be developed on a case by case basis.
In the instant case, there was absolutely no evidence which would support the conclusion that Burks' act of coming from behind his trailer while naked and putting his hands on his hips was an act of "wicked, lustful, unchaste, licentious or sensual design." There is no evidence that Burks knew the girls had earlier been ogling him or that he knew that the mother and daughter had returned. See Durant v. State, 647 So.2d 163 (Fla. 2d DCA 1994) (holding that evidence failed to prove wicked, lustful, unchaste intent on part of defendant who urinated off his back steps one evening, allegedly knowing that teenage girls were outside and would see him; *471 circumstances must show a lewd or lascivious intent). Burks had just stepped from behind his trailer and he put his hands on his hips. He made no motions or movement and he said nothing. There is a complete absence of circumstances from which lewd and lascivious intent could be imputed. Interestingly, Jennifer would not have even been exposed to the alleged lewd and lascivious act had her mother not taken her to the sceneat Butch's direction and the question arises as to why these adults would knowingly send minor girls back to the scene of something the adults considered lewd and lascivious. We reverse Burks' conviction.
REVERSED.
PETERSON, J., concurs.
COBB, J., concurs and concurs specially, with opinion in which PETERSON, J., concurs.
COBB, J., concurring specially.
I concur in Judge Sawaya's excellent opinion and note that it is not too late for a responsible prosecutor to prosecute Butch for aggravated battery based on the latter's own testimony.