COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Agee
Argued at Salem, Virginia


TERRY LYNN HOLLEY
                                          OPINION BY
v.   Record No. 0265-01-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                       APRIL 23, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                   Charles J. Strauss, Judge

        Rudolph A. Shupik, Jr., for appellant.

        Kathleen B. Martin, Assistant Attorney
        General (Randolph A. Beales, Attorney
        General, on brief), for appellee.


     Terry Lynn Holley (appellant) was convicted in a bench

trial of taking indecent liberties with a child, in violation of

Code § 18.2-370.  On appeal, he contends the trial court erred

in finding the evidence sufficient to prove beyond a reasonable

doubt that he displayed his genitals in the presence of children

and that he acted with the requisite lascivious intent.  Finding

no error, we affirm the judgment of the trial court.

                       I.  BACKGROUND

     Under familiar principles of appellate review, we examine the

evidence in the light most favorable to the Commonwealth, the

prevailing party below, granting to it all reasonable inferences

fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va.

App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that Tina Talley lived next door to appellant for approximately four years. Talley provided daycare services at her home for three small children. On several occasions while in her yard with the children, Talley saw appellant standing nude at the glass doors at the rear of his house. The distance between the glass doors and Talley's yard was stipulated to be 441.65 feet. On some days, appellant whistled at Talley as he stood at the glass doors. On June 6, 2000, Marsha Flinchum saw appellant standing nude at the glass doors of his home when she brought her twin fourteen-month-old daughters to Talley's home. Also on that morning, Lisa Powell dropped her six-month-old child at Talley's home and saw appellant naked behind the glass doors waving his hands over his head to get her attention. Powell told Talley about the incident, and Talley called the police.

On June 7, 2000, at about 7:30 a.m., Deputy Vicky Chaney, Sergeant Tommy Nicholson and Investigator Terry Barker of the Pittsylvania County Sheriff's Office set up a video camera in Talley's yard directly across from appellant's glass doors. After approximately an hour, the curtains on appellant's glass doors opened and, with her unaided eyes, Chaney saw appellant standing naked at the doors. He had his hand on his penis and jerked it up and down. Chaney saw appellant's genitals when he moved his hand away from his penis, and she saw him looking through binoculars.

- 2 -

Talley followed her normal routine while the police were at her home.  She took the children outside into her yard and at that time, she heard a knocking noise coming from appellant's home.  When she turned toward the noise, Talley saw appellant, standing nude, at the glass doors.  She testified appellant's hand went "down toward his privates" and she could see all of "his private area."

On June 8, 2000, Nicholson and two other officers executed a search warrant at appellant's residence.  After appellant was advised of his rights, Nicholson "asked [him] if he had a problem with expos[ure]" and he admitted that he did.  He stated he was taking testosterone shots and sometimes lost control.

Appellant's wife also stated appellant had "some problems . . . with regard to his sexual potency" and that, based on an article she found, she had suggested appellant allow sunlight to "come down on him."  She said she had seen him sitting in front of the glass doors on several occasions, but had never seen him naked at the doors or touch his genitals.  She asserted that the glass doors were tinted so one could not see into the house from Talley's yard or from the roadway near Talley's property.  Appellant's sister also said she could not see appellant standing in the glass doors from outside the house because of the tinting.

Chaney's videotape was played for the trial court and after viewing it the trial judge found inter alia:

It's clear to the Court from the evidence that, and from viewing the video, that the defendant was standing close to the sliding glass doors that were lit by sunlight. It's clear to the Court that he could easily be seen from the Talley's front yard. Now I was not able to observe in the video his genitals. I could see his hand moving in his groin area, but I was unable to, from the video, see his genitals. There were witnesses that testified that they could see his genitals. The police officer testified that she could see his penis and that his hand was jerking up and down. I could see hand movements in the groin area which would be consistent with that . . . I could see the motions that would corroborate what the officer testified to. . . . I could see in the video that he picked up binoculars from time to time and looked in the direction of the front yard, and then would put the binoculars back down and continue the hand movements in his groin area. . . . [I]n this case it was obvious from the video and it's been testified to that at least one of the children or two of the children were in the yard playing, and with Mrs. Talley, running around. Mrs. Talley testified to what she could observe, which was she could observe the defendant naked without any clothes and she could observe his genitals. So in terms of "expose" it appears that the evidence would support that the defendant did expose himself in the presence of the children, whether they actually saw it . . . it's whether they may reasonably have perceived it, and if the witnesses that testified were able to perceive it then it's a fair inference that the children or child could have perceived it also. The question is whether it was with lascivious intent . . . I think the linchpin probably in this case is the defendant's admission to the officer that he had a problem controlling himself, had a problem with exposing himself, and I think with all of that the Court finds the evidence sufficient beyond a reasonable doubt to find the defendant guilty.

- 4 -

## II.  ANALYSIS

In reviewing the sufficiency of the evidence, "the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict."  Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991).  "[T]he trial court's judgment will not be set aside unless plainly wrong or without evidence to support it."  Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999).  "The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination."  Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (internal citation omitted).

## III.  PRESENCE

Appellant first argues that his actions were not done in the "presence" of the children because he was in his home, the distance involved made it unlikely he could be seen, and no evidence established that the children, ages six months and fourteen months respectively, had seen him.  These contentions are without merit.

Code § 18.2-370(A)(1) provides in pertinent part:  "Any person eighteen years of age or over, who, with lascivious intent, shall knowingly and intentionally . . . [e]xpose his or her sexual or genital parts to any child under the age of

fourteen years to whom such person is not legally married

. . . shall be guilty of a Class 6 felony."[1]

Black's Law Dictionary defines "presence" as an "[a]ct, fact, or state of being in a certain place and not elsewhere, or within sight or call, at hand, or in some place that is being thought of."  Black's Law Dictionary 1060-61 (5th ed. 1979).

We have interpreted Code § 18.2-370 to mean "the intentional display by an adult, with lascivious intent, of his or her genitals in the presence of a child where a reasonable probability exists that they might be seen by that child, regardless of the child's actual perception of such a display."  Siquina v. Commonwealth, 28 Va. App. 694, 699, 508 S.E.2d 350, 353 (1998) (emphasis added).

"[W]hether an object is actually seen by its intended audience is irrelevant to whether that object has been exposed."  Id. at 698, 508 S.E.2d at 352.

"[A]n indecent exposure must be either in the actual presence and sight of others, or in such a place or under such circumstances that the exhibition is liable to be seen by others."  Noblett v. Commonwealth, 194 Va. 241, 245, 72 S.E.2d 241, 243-44 (1952) (citing Case v. Commonwealth, 231 S.W.2d 86, 87 (Ky. 1950)).  See also Wicks v. City of Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 754-55 (1974) (citing Noblett and

---

[1] The statute was amended in 2001 to make the offense a Class 5 felony.

stating that an act constitutes an intentional and indecent exposure if it occurs in a place where it is likely to be seen, whether actually seen by one or several persons).

The instant case falls squarely within the rationale of Siquina and Noblett. The evidence proved that appellant exposed himself in a place and manner where it could clearly be seen by others, proof that exceeds the "reasonable probability" required. Appellant's actions and appearance were visible to anyone on the Talley property. Both Deputy Chaney and Talley saw appellant standing at his glass doors naked and touching his genitals while the children were outside. The children's parents, Powell and Flinchum, saw appellant exhibiting similar behavior one day earlier. The distance between appellant's home and the Talley property was of no moment as appellant was obviously visible to anyone in Talley's yard, including the children playing there. "[W]hether an object is actually seen by its intended [victim] is irrelevant . . . ." Siquina, 28 Va. App. at 698, 508 S.E.2d at 352. Additionally, the trial judge found that the videotape showed the same behavior of masturbating or fondling himself testified to by the police and Mrs. Talley. Thus, appellant's exposure was in the "presence of the child[ren]" because a "reasonable probability exist[ed] that [appellant] might be seen by [the children]," id. at 699, 508 S.E.2d at 353, and violated Code § 18.2-370.

## IV.  LASCIVIOUS INTENT

Appellant next contends the Commonwealth failed to prove he acted with a lascivious intent.  We disagree.

"Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact."  Summerlin v. Commonwealth, 37 Va. App. 288, 297, 557 S.E.2d 731, 736 (2002) (citing Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991)).  "Intent may be shown by a person's conduct and by his statements."  Id. at 297-98, 557 S.E.2d at 736 (citing Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989)).

While Code § 18.2-370(A)(1) does not define the term "lascivious," the Supreme Court in McKeon v. Commonwealth, 211 Va. 24, 175 S.E.2d 282 (1970), did so.  McKeon holds that "'lascivious' describes a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite."  Id. at 27, 175 S.E.2d at 284.  "[T]he evidence does not warrant a finding that lascivious intent of the defendant has been shown beyond a reasonable doubt . . . [if] . . . there is no evidence that the defendant was sexually aroused; that he made any gestures toward himself or to her; that he made any improper remarks to her; or that he asked her to do anything wrong."  Id.  However, "proof of any one factor can be sufficient to uphold a conviction under

- 8 -

[Code § 18.2-370]." <u>Campbell v. Commonwealth</u>, 227 Va. 196, 200, 313 S.E.2d 402, 404 (1984).

Appellant argues the evidence failed to prove he was sexually aroused, because the videotape did not clearly display his genitals. Appellant contends the Commonwealth did not prove he gestured toward himself, that he made any improper remarks, or that he asked anyone to do anything wrong. Again, we disagree.

Viewed in the light most favorable to the prevailing party, the Commonwealth, the evidence met at least two of the <u>McKeon</u> requirements. Deputy Chaney testified that she "could see his penis, his genitals" and stated that she saw appellant "naked, standing at his sliding doors . . . and he had his hand on his penis . . . jerking up and down." The trial judge found that the videotape tracked Chaney's testimony and showed appellant's hand "moving in his groin area . . . which would be consistent with . . . what the officer testified to." Therefore, the evidence, properly viewed, established that appellant was sexually aroused during the incident. This evidence satisfies the first element of the <u>McKeon</u> test.

Appellant also attempted to get Talley's attention by knocking on the glass doors after the children were outside. Talley stated that she turned and saw appellant only after hearing "something knocking . . . a noise . . . from Mr. Holley's home." She also reported that she saw appellant

- 9 -

exhibiting similar behavior on several previous occasions and noted that "[s]ome days he would whistle" to get her attention. Lisa Powell testified that she saw appellant "waving his hands over his head trying to get [her] attention" as he stood naked in the glass doors on the day prior to the incident. Finally, appellant admitted to Sergeant Nicholson that he "had a problem with exposing [himself]" and "that sometimes he could not control himself." This evidence supports the finding that appellant's actions satisfy at least two of the McKeon criteria.

In light of the foregoing, we affirm appellant's conviction.

Affirmed.