(102 P.3d 496)
No. 90,881

STATE OF KANSAS, *Appellee*, v. RANDY JAMES BRYAN, *Appellant*.

Opinion filed December 23, 2004.

*Virginia A. Girard-Brady*, assistant appellate defender, for appellant.

*Paul E. Dean*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before GREENE, P.J., MARQUARDT, J., and BUKATY, S.J.

GREENE, J.: Randy Bryan appeals his conviction of lewd and lascivious behavior, claiming insufficient evidence and failure to instruct on lesser included offenses. His principal argument is that such behavior is no completed crime when the victim is asleep, and that the evidence supported only an attempt to commit lewd and lascivious behavior. We reject Bryan's argument and affirm his conviction.

*Factual and Procedural Overview*

H.B. is the eldest daughter of defendant Bryan and was 13 years of age on the date of the offense charged. Her mother (Bryan's wife) awoke in the early morning hours and heard H.B. coughing and crying; upon entering her daughter's room, she found Bryan lying naked upon H.B's bed, on top of the covers, facing H.B. with his left hand on his erect penis. Upon the mother's entry, Bryan rolled off the bed and tried to cover himself, explaining that he had gotten up early to take a shower, went into his daughter's room because he heard her crying, and had an erection because he needed to use the bathroom. At trial, he explained that he was naked because he had fallen asleep after having sexual intercourse with his wife.

The investigating officer testified that H.B. told him she frequently had "night terrors" in which she dreamed someone was chasing her or she was being hurt. H.B. remembered having a bad dream on the night in question and remembered only that she felt like she was being shaken. When asked at trial what she remembered from that incident, H.B. responded, "All I know is that I was dreaming." She testified that although her mother had told her that Bryan was in her room, she did not recall seeing him.

The defense did not request a jury instruction on the lesser included offense of attempt to commit lewd and lascivious behavior, and the jury found Bryan guilty of the completed offense. Bryan

was sentenced to 60 months' probation, with an underlying prison term of 7 months. He appeals.

*Standards of Review*

To the extent Bryan's argument requires interpretation and application of a statute, it presents an issue of law and our review is unlimited. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). To the extent Bryan challenges the sufficiency of the evidence, we review all of the evidence in the light most favorable to the State to determine whether we are convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. See *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004). To the extent Bryan challenges the failure to give an instruction that was not requested, we determine whether there was clear error. See *State v. Saiz*, 269 Kan. 657, 661, 7 P.3d 1214 (2000). The failure to give an instruction is clear error only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict. *State v. Sims*, 262 Kan. 165, 172, 939 P.2d 779 (1997).

*Was the Evidence Sufficient to Support Bryan's Conviction of Lewd and Lascivious Behavior?*

Bryan initially argues that the evidence was insufficient to support his conviction because "H.B. was not aware, nor had any recollection, of the fact that her father had even been in her bedroom on the morning of the alleged incident," and that the statute, K.S.A. 2003 Supp. 21-3508(a)(2), "implies and/or requires some knowledge or awareness on the part of the victim." Whether the statute should be construed in this fashion is a question of first impression in Kansas.

The crime of lewd and lascivious behavior is defined by our statute as "exposing a sex organ in the presence of a person who is not the spouse of the offender and who has not consented thereto, with intent to arouse or gratify the sexual desires of the offender or another." K.S.A. 2003 Supp. 21-3508(a)(2). If such an act is committed in the presence of a person younger than 16 years of age, it is a severity level 9 person felony. K.S.A. 2003 Supp. 21-

3508(b)(2). Bryan argues that the statute should not be so broadly interpreted that physical proximity alone is sufficient to satisfy the requirement of "presence." In construing the statute, we employ recognized rules of construction, but the fundamental rule governing our task is to ascertain the intent of the legislature. See *State v. Taylor*, 262 Kan. 471, Syl. ¶ 5, 939 P.2d 904 (1997).

### *Natural and Ordinary Meaning of Key Terms*

Bryan's challenge requires that we first examine the statutory language, particularly the terms "expose" and "presence" to determine their natural and ordinary meaning. See *City of Lawrence v. McCormick*, 275 Kan. 509, 512-13, 66 P.3d 854 (2003).

The natural and ordinary definition of the verb "expose" does not require that someone actually perceive what is being displayed. The common dictionary definition of expose is "to lay open to view." Webster's Third New International Dictionary 802 (1986). In Black's Law Dictionary 579 (6th ed. 1990), expose is defined as "[t]o show publicly; to display; to offer to the public view . . . ." As these definitions indicate, whether an object is actually seen by its intended audience is irrelevant to whether that object has been exposed.

Similarly, the natural and ordinary definition of "presence" does not generally require sensory perception by another. The principal dictionary definition of presence is:

"[T]he fact or condition of being present; the state of being in one place and not elsewhere; the condition of being within sight or call, at hand, or in a place being thought of; the fact of being in company, attendance, or association; the state of being in front of or in the same place as someone or something." Webster's Third New International Dictionary 1793 (1986).

Among the eight alternate definitions appearing in Webster's, none imply sensory perception by another. Black's Law Dictionary 1221 (8th ed. 2004) reflects a similar principal definition but suggests an alternate definition of "[c]lose physical proximity coupled with awareness." Thus, our examination of common and ordinary meanings of the terms is instructive but not necessarily conclusive on the issue framed by Bryan.

### Historical and Common-law Origin

Where the face of the statute leaves its construction uncertain, the court may properly look into the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various constructions suggested. *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, Syl. ¶ 5, 973 P.3d 176 (1999). As a rule of exposition, statutes are to be construed in reference to the principles of the common-law. K.S.A. 77-109; see *Beeson v. Busenbark*, 44 Kan. 669, 673, 25 Pac. 48 (1890).

At common-law, the offense of indecent exposure involved intentionally exposing one's private parts in public in such a manner that the act is *seen or likely to be seen* by casual observers. 67 C.J.S. *Obscenity* § 9 p. 24; see *District of Columbia v. Garcia*, 335 A.2d 217 (D.C. 1975); *Dill v. State*, 24 Md. App. 695, 332 A.2d 690 (1975); *State v. Granger*, 199 S.W.2d 896, 899 (Mo. App. 1947); *State v. McNeil*, 3 Conn. Cir. 479, 217 A.2d 233 (App. Div. 1965); *Siquina v. Commonwealth*, 28 Va. App. 694, 508 S.E.2d 350 (1998). Although our lewd and lascivious behavior proscription undoubtedly has its origin in common law, our statute expands common-law indecent exposure by adding the presence and gratification intent elements, but neither addition purports to limit or alter the common-law element that the act be seen or "is likely to be seen."

### Legislative Intent

Turning to legislative intent, the parties agree that the legislature's intent is to protect children from sex offenses. This intent is also reflected in the legislative history. During consideration of the 1998 amendments to K.S.A. 21-3508 which increased the penalty for lewd and lascivious behavior in the presence of a child under 16 years of age, it was said that "[t]he proposed bill is designed to protect our children against those individuals who would sexually assault them." Minutes, Sen. Judiciary Comm., February 12, 1998. We acknowledge that this legislative purpose might be more consistent with a requirement that children be aware of the misconduct.

The legislature, however, did not specifically state that the conduct must actually be viewed and instead chose the broad term "presence" to implement its intent. We note that the legislature certainly could have employed phrases such as "viewed by," "perceived by," or similar phrases in lieu of the term "presence;" but having chosen the term "presence," the legislature failed to signal any clear intent to require sensory perception by the victim. Again, our examination of legislative intent is instructive but standing alone is less than conclusive on the issue framed.

### Effect of Suggested Interpretations

Examining the effect the statute may have under various constructions suggested, we are persuaded that Bryan's interpretation would cause lewd and lascivious behavior to become indistinguishable from the crime of indecent liberties with a child. Indecent liberties with a child is defined as "*engaging* in [lewd fondling or touching of the person of the offender and other specified acts] *with* a child who is 14 or more years of age but less than 16 years of age." (Emphasis added.) K.S.A. 21-3503(a). Obviously, engaging in such acts with a child does imply sensory perception if not participation in some form by the child. Given the independent nature of the crimes and their respective degrees of severity, the legislature did not intend for there to be no distinction; indeed, if we interpret the offenses as identical, we would nullify an important legislative distinction. See *In re Estate of Foley*, 22 Kan. App. 2d 959, 962, 925 P.2d 449, *rev. denied* 261 Kan. 1085 (1996). Instead, we believe that this comparison between these two crimes compels the conclusion that lewd and lascivious behavior does not require any "engagement" but rather only an "exposure" that is likely to be seen by the child.

### Other Jurisdictions

Four states have considered the issue framed and are evenly split as to the need for sensory perception. In *State v. Werner*, 609 So. 2d 585, 586 (Fla. 1993), the Florida Supreme Court found that presence under a statute prohibiting commission of lewd or lascivious acts in the presence of a child under 16 years old "encom-

passes sensory awareness as well as physical proximity." "While the child need not be able to articulate or even comprehend what the offender is doing, the child must see or sense that a lewd or lascivious act is taking place for a violation to occur." 609 So. 2d at 587.

Similarly, the Louisiana Supreme Court recently held that "in the absence of a physical touching upon the person of the child, [statute prohibiting indecent behavior with juveniles] requires the knowing commission of a sexual act such that the child sees or senses that a sexual act is taking place, even if the child is not able to articulate or even comprehend what the offender is doing, for a violation to occur." *State v. Interiano*, 868 So. 2d 9, 16 (La. 2004). "The legal usage of the word 'presence' denotes something more than being in the immediate vicinity; it is the viewing or awareness of an act that gives significance to the term." 868 So. 2d at 16.

In *State v. Stevenson*, 656 N.W.2d 235, 239 (Minn. 2003), the Minnesota Supreme Court interpreted the phrase "in the presence of a minor" more broadly to mean "reasonably capable of being viewed by a minor." The *Stevenson* interpretation of presence chose among three interpretations. It found that the narrow interpretation, "actually viewed by a minor," would "frustrate the legislative intent that is evident from the choice of a broad phrase and, therefore, is not a reasonable interpretation." 656 N.W.2d at 239. The court then chose the more lenient of two reasonable interpretations, discarding "in the proximity of a minor" as too broad and adopting "reasonably capable of being viewed by a minor." The court also noted that "[t]here may be circumstances in which the sexual conduct may be perceived through senses other than sight and still fit the statutory presence requirement . . . ." 656 N.W.2d at 239 n.3.

In construing Virginia's statute prohibiting exposure of the genitals in the presence of a child, the court in *Siquina*, 28 Va. App. at 697-98, interpreted the term "expose" to mean display and stated that "whether an object is actually seen by its intended audience is irrelevant to whether that object has been exposed." *Siquina* held that the statute "proscribes the intentional display by an adult, with lascivious intent, of his or her genitals in the presence

of a child where a reasonable probability exists that they *might* be seen by that child, regardless of the child's actual perception of such a display." (Emphasis added). 28 Va. App. at 699. The court did not attempt to define "presence," but came to its conclusion after an analysis of the elements of indecent exposure at common-law. 28 Va. App. at 698-99.

After examining with care these authorities from other jurisdictions, we adopt the rationales and conclusions of the Minnesota and Virginia courts, principally because they recognized the importance of construing the term consistent with common-law principals and specifically noted that their legislatures could have selected terminology narrowing the "presence" requirement but chose not to do so. Both courts construe the term "presence" for these purposes as " 'reasonably capable of being viewed [reasonably might be seen] by' " the victim, thus requiring no sensory perception. 656 N.W.2d at 239; 28 Va. App. at 699.

### Summary and Conclusion of Statutory Interpretation Analysis

Synthesizing these various methods of statutory construction, we conclude that the presence requirement in K.S.A. 2003 Supp. 21-3508(a)(2) and (b)(2) does not require sensory perception or awareness of the victim, only that the act be reasonably capable of being seen. This conclusion is based upon (1) the common understanding of the terms "expose" and "presence;" (2) the common-law element of the crime of indecent exposure, that the act need not be seen but rather "is likely to be seen;" (3) legislative intent expressed by the use of the terms "expose" and "presence" rather than the terms "engagement," "seen by," or "perceived by;" (4) the proposed perception requirement would make the crime indistinguishable from the crime of indecent liberties with a child; and (5) the rationales expressed by courts in both Virginia and Minnesota.

### Given Our Statutory Construction, Was the Evidence Sufficient?

Bryan also claims that the evidence was insufficient to support his conviction due to the absence of evidence to show that he had the "intent to arouse or gratify the sexual desires of the offender

or another" as required by K.S.A. 2003 Supp. 21-3508(a)(2). Viewing the evidence in the light most favorable to the State as we must, we conclude that evidence of intent could be inferred from (1) Bryan's being naked on his daughter's bed; (2) Bryan's having an erection; (3) Bryan's having his hand on his erection when his wife entered the room; and (4) Bryan's attempt to hide his erection from his spouse when discovered. Although Bryan has alternative explanations for this evidence, we need not reweigh the evidence. We do not weigh conflicting evidence. See *State v. Van Winkle*, 254 Kan. 214, 225, 864 P.2d 729 (1993), *cert. denied* 511 U.S. 1144 (1994). We are convinced that a rational jury could have found Bryan guilty beyond a reasonable doubt. See *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

*Did the District Court Err in Failing to Instruct the Jury on the Lesser Included Offense of Attempt to Commit Lewd and Lascivious Behavior?*

Although Bryan did not request the instruction, he claims that the failure to give an instruction on the lesser included offense of attempt to commit lewd and lascivious behavior constituted clear error. The State argues that Bryan was not entitled to such an instruction because the evidence supports completion of the crime and Bryan's defense was a complete denial, citing *State v. Rowray*, 18 Kan. App. 2d 772, 779-80, 860 P.2d 40, *rev. denied* 254 Kan. 1009 (1993). We agree with the State.

Given our construction of the statutory element of presence, it is clear that either the crime was completed or it was not. There was no question that Bryan was exposed and reasonably capable of being viewed by a minor. Bryan's only defense was his attempt to offer his alternative explanations for his behavior, and none of them was consistent with an attempt. Where there is no substantial evidence applicable to the lesser degrees of the offense charged and all of the evidence taken together shows that the offense, if committed, was clearly of the higher degree, instructions relating to the lesser degrees of the offense are unnecessary. *State v. Gibbons*, 256 Kan. 951, 955, 889 P.2d 772 (1995).

Affirmed.