No. 90,881

STATE OF KANSAS, *Appellee*, v. RANDY BRYAN, *Appellant*.

(130 P.3d 85)

Opinion filed March 17, 2006.

*Virginia A. Girard-Brady*, assistant appellate defender, argued the cause and was on the brief for appellant.

*Paul E. Dean*, assistant county attorney, argued the cause, and *Ross R. McIlvain*, county attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Randy Bryan appeals his conviction for lewd and lascivious behavior. The Court of Appeals affirmed his conviction. This court granted Bryan's petition for review.

## FACTS

The facts are summarized from the Court of Appeals opinion:

"H.B. is the eldest daughter of defendant Bryan and was 13 years of age on the date of the offense charged. Her mother (Bryan's wife) awoke in the early morning hours and heard H.B. coughing and crying; upon entering her daughter's room, she found Bryan lying naked upon H.B's bed, on top of the covers, facing H.B. with his left hand on his erect penis. Upon the mother's entry, Bryan rolled off the bed and tried to cover himself, explaining that he had gotten up early to take a shower and went into his daughter's room because he heard her crying and had an erection because he needed to use the bathroom. At trial, he explained that he was naked because he had fallen asleep after having sexual intercourse with his wife.

"The investigating officer testified that H.B. told him she frequently had 'night terrors' in which she dreamed someone was chasing her or she was being hurt. H.B. remembered having a bad dream on the night in question and remembered only that she felt like she was being shaken. When asked at trial what she remembered from that incident, H.B. responded, 'All I know is that I was dreaming.' She testified that although her mother had told her that Bryan was in her room, she did not recall seeing him." *State v .Bryan*, 33 Kan. App. 2d 382, 383, 102 P.3d 496 (2004).

A jury convicted Bryan of lewd and lascivious behavior. Bryan appealed. The Court of Appeals affirmed Bryan's conviction. This court granted Bryan's petition for review on the limited issue of whether K.S.A. 2004 Supp. 21-3508(a)(2) requires an awareness by the victim.

Bryan argued to the Court of Appeals and this court that he cannot be convicted of lewd and lascivious behavior pursuant to K.S.A. 2004 Supp. 21-3508(a)(2) because H.B. was not aware of his exposed penis. Here, H.B. did not see Bryan's exposed penis because she was asleep. Likewise, there is no evidence to support a finding that H.B. perceived Bryan's penis in some other manner. Although H.B. felt like she was being shaken, she could not attribute that shaking to Bryan's exposed penis because she did not know he was in her bed. Thus, H.B. had no awareness of Bryan's exposed penis. If K.S.A. 2004 Supp. 21-3508(a)(2) requires the victim to be aware of the offender's exposed sex organ, Bryan's conviction for lewd and lascivious behavior must be reversed for insufficient evidence.

Whether K.S.A. 2004 Supp. 21-3508(a)(2) requires a victim to be aware of the offender's exposed sex organ is an issue of first impression. The Court of Appeals concluded that there is no requirement for sensory perception or awareness by the victim. *Bryan*, 33 Kan. App. 2d at 389.

K.S.A. 2004 Supp. 21-3508(a)(2) provides:

"Lewd and lascivious behavior is:

. . . .

"(2) publicly exposing a sex organ or exposing a sex organ in the presence of a person who is not the spouse of the offender and who has not consented thereto, with intent to arouse or gratify the sexual desires of the offender or another."

Analyzing Bryan's claim requires this court to interpret K.S.A. 2004 Supp. 21-3508(a)(2). The interpretation of a statute is a question of law over which this court has unlimited review. An appellate court is not bound by the trial court's interpretation. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

The fundamental rule of statutory construction is to ascertain the legislature's intent. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2005).

The prohibited act proscribed by K.S.A. 2004 Supp. 21-3508(a)(2) is exposing a sex organ. The verb "expose" means to "lay open to view: lay bare: make known: set forth." Webster's Third New International Dictionary 802 (1993). Synonyms for the verb "expose" include show or exhibit. Webster's Third New International Dictionary 802 (1993). This meaning limits the verb to the act itself without requiring someone to actually perceive what has been exposed. Thus, the act of exposing can be accomplished without anyone actually seeing what has been exposed. There is no awareness requirement associated with this element of the offense.

K.S.A. 2004 Supp. 21-3508(a)(2) does not proscribe every act of exposing a sex organ. Rather, it proscribes exposing a sex organ in a specific place to a specific class of persons commonly referred to as victims. The specific class of victims includes anyone who is not the offender's spouse and who does not consent to the exposure. K.S.A. 2004 Supp. 21-3508(a)(2). The specific place is in the "presence" of the victim, so the ordinary meaning of the word "presence" is key in determining when exposing a sex organ becomes criminal conduct.

The word "presence" has many meanings. The meanings relevant to the legislature's use of the word in K.S.A. 2004 Supp. 21-3508(a)(2) include:

"the fact or condition of being present: the state of being in one place and not elsewhere: the condition of being within sight or call, at hand, or in a place thought of: the fact of being in company, attendance, or association: the state of being in front of or in the same place as someone or something: the part of space within one's ken [range of perception], call, or influence: the vicinity of or the area immediately near one: the place in front of or around a person." Webster's Third New International Dictionary 1793 (1993).

Black's Law Dictionary 1221 (8th ed. 2004) imparts the concept of awareness to the term "presence," defining the word as "[t]he state or fact of being in a particular place and time: [c]lose physical proximity coupled with awareness."

Although Webster's Third New International Dictionary does not specifically state that awareness is a component of the word "presence," its definitions imply that an awareness is inherent in the definition. Each of these definitions involves a perception of something, *e.g.*, space or surrounding area (in front of, in the same place, in the vicinity of, in the area immediately near), or other people (being in the company of, in attendance with, or in association with). "Perception" is defined as "awareness of the elements of environment through physical sensation." Webster's Ninth New Collegiate Dictionary 872 (1991). Thus, the ordinary meaning of the word "presence" includes an awareness component.

However, the interpretation of the word "presence" to include an awareness component does not necessarily lead to the conclusion that K.S.A. 2004 Supp. 21-3508(a)(2) requires the *victim* to be aware of an offender's exposed sex organ. Therefore, we must first consider the language in the statute to determine who must have the awareness. See *McCurry*, 279 Kan. at 121 (requiring the court to look at the language in the statute).

The final phrase in K.S.A. 2004 Supp. 21-3508(a)(2), "with intent to arouse or gratify the sexual desires of the offender or another," adds a specific intent element that limits the broad term "presence." Specifically, an offender must expose a sex organ with the intent of arousing or gratifying the sexual desires of the offender or another. K.S.A. 2004 Supp. 21-3508(a)(2). To arouse or gratify the offender's sexual desires, it is necessary for only the

offender to be aware of what is happening. To arouse or gratify the sexual desires of another, the other person must be aware of what is happening. Neither of these scenarios necessarily requires the victim to be aware of the exposed sex organ to satisfy the specific intent element of the statute.

When "presence" is linked to the specific intent element of the offense, the victim only has to be aware of the offender's sex organ when the specific intent of the offender is to arouse or gratify the sexual desires of the victim. If the offender is arousing or gratifying his or her own sexual desires, then only the offender must be aware of the victim and his or her own act of exposing a sex organ. Similarly, if the offender intends to arouse or gratify the sexual desires of another person, that person must be aware of the offender's exposed sex organ. Even though the term "presence" implies an awareness, the question is whose awareness is incorporated in K.S.A. 2004 Supp. 21-3508(a)(2).

The distinction between an awareness by the offender and an awareness by the victim is illustrated in *Burks v. State*, 766 So. 2d 468 (Fla. Dist. App. 2000), and *Holley v. Com.*, 38 Va. App. 158, 562 S.E.2d 351 (2002). In *Burks*, the defendant was convicted of committing a lewd and lascivious act in the presence of a child. Burks lived on a remote, 5 acre tract of land situated on a gravel road in rural Florida. 766 So. 2d at 469. He was plagued by a hearing impairment and alcoholism. One afternoon while Burks was enjoying his outdoor Jacuzzi and a drink, he decided to get out of the tub to check his garden hose.

Two teen-aged girls riding all terrain vehicles on the gravel road observed Burks' naked body as he walked around his yard. After verifying that Burks was naked, the girls informed their mother and her fiancé. At the fiancé's instruction, the mother returned to Burks' home with the younger girl to observe Burks' nudity for herself. The mother's fiancé then instructed the teen-aged girls to return and keep Burks outside while he contacted the authorities. The mother returned and confronted Burks, cussing at him and calling him names. Burks responded, "I'm sorry, ma'am, I didn't realize anybody was out here." 766 So. 2d at 469.

The *Burks* court reversed Burks' conviction, concluding there was no evidence that Burks was aware the girls were ogling him and no evidence to establish that Burks' act of walking around his yard naked was intended for lewd or lascivious purposes. 766 So. 2d at 470-71.

The opposite result was reached in *Holley*, where the defendant was convicted of indecent liberties with a child for displaying his genitals in the presence of children. Holley lived next door to a woman who operated a daycare center in her home. Two of the parents dropping children off at daycare observed Holley standing naked at his glass doors, waving his arms to get the children's attention. The daycare provider also observed Holley standing naked at the glass doors with his hand on his penis while the children were in the yard playing. The daycare provider reported Holley to the police. A police officer conducting surveillance observed Holley naked at the glass doors, masturbating.

Although the children at the daycare center were 6 months to 14 months old, the *Holley* court upheld Holley's conviction, concluding that Holley's exposure "was in the 'presence of child[ren]' because a 'reasonable probability exist[ed] that [Holley] might be seen by [the children].' " 38 Va. App. at 165 (quoting *Siquina v. Commonwealth*, 28 Va. App. 694, 699, 508 S.E.2d 350 [1998]).

In reaching this conclusion, the *Holley* court did not analyze the defendant's awareness of the child victims because the language in the statute at issue in *Holley* differs from K.S.A. 2004 Supp. 21-3508(a)(2). The Virginia statute does not specifically use the term "presence" to define the crime. The *Holley* decision demonstrates a factual scenario where a defendant can be convicted of exposing himself or herself in the presence of children without requiring proof that the children observed the offender's exposed sex organ.

Because this issue is one of first impression in Kansas, decisions from other jurisdictions are helpful in analyzing the issue. The Court of Appeals noted that there was a split between the jurisdictions that had addressed similar issues. Minnesota and Virginia have concluded that a child is not required to perceive what is being exposed. *State v. Stevenson*, 656 N.W.2d 235, 239 (Minn. 2003); *Siquina*, 28 Va. App. at 698. Florida and Louisiana, on the

other hand, have determined that the term "presence" in the statute includes a sensory perception by the victim. *State v. Werner*, 609 So. 2d 585, 586 (Fla. 1992); *State v. Interiano*, 868 So. 2d 9, 16 (La. 2004).

In reaching its decision in this case, the Court of Appeals relied on *Siquina*, 28 Va. App. 694. In *Siquina*, the defendant, who was visiting at the victim's home, grabbed the victim when her mother was not looking and took the victim into the bathroom. Once inside the bathroom, Siquina kissed the 5-year-old victim with his tongue and then told her to turn around and bend over the toilet. Siquina dropped his pants and underwear to the floor. The victim saw Siquina's underwear, but did not see his genitals. At that point, the victim's mother pulled open the bathroom door and saw Siquina standing behind her daughter with an erection. Siquina was convicted of attempted rape and indecent liberties with a child for intentionally exposing his sexual or genital parts to a child with a lascivious intent. 28 Va. App. at 696-97.

On appeal, Siquina argued that he could not be convicted of exposing himself because the victim had not actually seen his penis. The *Siquina* court noted that the verb "expose" does not "require that someone actually perceive what is being displayed." 28 Va. App. at 697. It concluded that whether an object is actually seen by the child victim is irrelevant to whether that object has been exposed. 28 Va. App. at 698.

*Siquina* supports the analysis that the word "expose" does not require actual perception. Nevertheless, *Siquina* is not directly on point because the Virginia statute did not use the word "presence"; therefore, the *Siquina* court was not required to analyze the term "presence" in reaching its decision.

While the *Siquina* court focused on the word "expose," the *Stevenson* court focused on the word "presence." After reviewing the wording of the Kansas statute, the Court of Appeals adopted the *Stevenson* court's reasoning. *Bryan*, 33 Kan. App. 2d at 389. In *Stevenson*, 656 N.W.2d 235, the defendant was charged with fifth-degree criminal sexual conduct for masturbating in his truck while it was parked near a sidewalk at a public beach, facing a playground occupied by several children. Fifth-degree criminal sexual conduct

criminalized "masturbation or lewd exhibition of the genitals in the presence of a minor under the age of 16, knowing or having reason to know the minor is present." Minn. Stat. § 609.3451 (2000); *Stevenson*, 656 N.W.2d at 238. The district court convicted Stevenson of *attempted* fifth-degree criminal sexual conduct because none of the children had actually seen Stevenson. 656 N.W.2d at 238. The Minnesota Supreme Court affirmed Stevenson's conviction but disagreed with the district court's interpretation of the word "presence." The *Stevenson* court concluded that "presence" as used in the statute meant "reasonably capable of being viewed by a minor," but did not require that a minor actually view the prohibited conduct. 656 N.W.2d at 239.

In reaching its conclusion in this case, the Court of Appeals declined to follow the contrary opinions from the Florida Supreme Court and the Louisiana Supreme Court. In *Werner*, 609 So. 2d at 586, the Florida Supreme Court concluded that the complete definition of "presence" encompassed a sensory awareness by the child and a physical proximity. It determined there must be an awareness by the child. The *Werner* court did not require that the child understand or articulate what the offender was doing. Rather, the *Werner* court only required that the child "must see or sense that a lewd or lascivious act is taking place." 609 So. 2d at 587. It is important to note that the Florida statute at issue in *Werner* did not incorporate the specific intent element included in K.S.A. 2004 Supp. 21-3508(a)(2). Thus, the *Werner* court did not analyze the combination of the term "presence" with language requiring a specific intent to arouse or gratify sexual desires.

In *Interiano*, 868 So. 2d 9, the Louisiana Supreme Court also concluded that the child must see or sense "that a sexual act is taking place, even if the child is unable to articulate or even comprehend what the offender is doing." Although the Louisiana statute at issue in *Interiano* included a specific intent element like K.S.A. 2004 Supp. 21-3508(a)(2), the majority of the Louisiana Supreme Court did not analyze the combination of the term "presence" with that specific intent element of the statute.

However, one of the Louisiana justices wrote a separate concurring opinion. The justice agreed with the outcome but disagreed

with the court's analysis of the term "presence." *Interiano*, 868 So. 2d at 19. The concurring justice analyzed the combination of the term "presence" and the specific-intent element and concluded that there must be a

"nexus between the child's presence and the defendant's sexual gratification, *i.e.*, the *knowing* commission of a sexual act in which the presence of a child is either an active or passive stimulus for the adult's sexual activity and a component of his or her sexual gratification, without regard to whether the child sees or senses that a sexual act is taking place." 868 So. 2d at 19.

Thus, the concurring opinion in *Interiano* provides support for the analysis of K.S.A. 2004 Supp. 21-3508(a)(2) based on a combination of the term "presence" and the specific-intent element of the statute. It also supports the State's argument that requiring a victim to actually perceive the offender's exposed sex organ would "allow the most vulnerable portion of our society to be victims of a mere attempted Lewd and Lascivious act." The concurring justice in *Interiano*, 868 So. 2d at 20, noted this possibility, stating:

"[T]he majority's interpretation decriminalizes conduct that heretofore was prohibited by the statute, *e.g.* a defendant masturbating while standing over a sleeping child in her crib; or a defendant who, under the pretext of playing a game with a child, induces the young child to wear a blindfold and then proceeds to masturbate, utilizing the child as a sexual stimulus but not touching the child. In both scenarios, the children are completely unaware that they have become an integral component in a sexual scenario staged by the defendant with the intention of gratifying his own sexual desires."

In addition to cases from other jurisdictions, the Court of Appeals considered the ordinary meanings of the words "expose" and "presence," the history and common-law origin of the crime, the legislative intent as noted by the legislative history, and the effect of Bryan's interpretation. 33 Kan. App. 2d at 385-87.

The Court of Appeals acknowledged that the legislative history, which indicates that the most recent amendment was " 'designed to protect our children against those individuals who would sexually *assault* them,' " supports the conclusion that the legislature intended for children to be aware of the misconduct. (Emphasis added.) 33 Kan. App. 2d at 386. Assault, as a term of art, includes an element of awareness because it requires reasonable apprehen-

sion. See K.S.A. 21-3408. The prohibition against lewd and lascivious behavior does not require reasonable apprehension. However, the Court of Appeals distinguished the legislature's use of the word "assault" in its explanation of the intent of the statute by noting that the legislature could have used more specific phrases such as "viewed by" or "perceived by" in 21-3508(a)(2) to signal its clear intention to require a sensory perception by the child. 33 Kan. App. 2d at 387.

The Court of Appeals also relied on the effect of Bryan's suggested interpretation, concluding that requiring a child to actually perceive the offender's act would nullify the legislative distinction between lewd and lascivious behavior and indecent liberties with a child. The Court of Appeals' reliance on this analysis is misplaced. Lewd and lascivious behavior applies to all ages of victims, not just children. The indecent liberties with a child statute only applies to children who are 14 or 15 years old. K.S.A. 21-3503. In addition, indecent liberties requires a touching, a fondling, or a solicitation to touch or fondle. K.S.A. 21-3503. Lewd and lascivious behavior does not require any contact or verbal communication between the offender and the victim. Rather, lewd and lascivious behavior only requires an act of exposing by the offender, and that can be accomplished without touching, fondling, or soliciting. Accordingly, the two crimes would continue to have distinct elements regardless of the interpretation of "presence" as it applies to lewd and lascivious behavior.

Although the cases from other jurisdictions offer guidance for this court's analysis, this court is required to interpret the language used by the Kansas Legislature in K.S.A. 2004 Supp. 21-3508(a)(2), which is different than the language in the other states' statutes. Inserting the ordinary definitions for the terms "exposing" and "presence" into K.S.A. 2004 Supp. 21-3508(a)(2) results in a definition of lewd and lascivious behavior as showing or exhibiting a sex organ in a place where a victim, who is not the offender's spouse and has not consented to the act, is within the offender's or another's range of perception, and committed with the intent to arouse or gratify the sexual desires of the offender or another.

If the intent is to arouse or gratify the offender's sexual desires, it is the offender's awareness of the victim that is relevant and not the victim's awareness of the offender's exposed sex organ. Likewise, if the intent is to arouse or gratify the sexual desires of a third party other than the offender or the victim, the victim's awareness of the offender's sex organ is irrelevant. In such incidents, the third party must be aware of the victim and the offender's exposed sex organ to satisfy the presence and specific intent elements of the statute. Thus, the legislature's combination of the words "exposing," and "presence" with a specific intent element indicates the legislature's intent to criminalize lewd and lascivious behavior whether or not the victim has actually seen or perceived the offending act or acts.

Applying the elements of K.S.A. 2004 Supp. 21-3508(a)(2) to the facts of this case supports upholding Bryan's conviction. It is undisputed that Bryan was on H.B.'s bed naked with an erection. H.B.'s mother testified that she saw Bryan lying next to H.B. with his hand on his erect penis. The mother further testified that Bryan immediately tried to cover himself when she entered the room. Bryan's attempt to cover himself indicates that he was aware his erect penis was exposed. Bryan admitted being naked next to H.B. in her bed with an erection, thus indicating that Bryan was aware of H.B.'s presence. H.B., the victim, testified that she is Bryan's daughter and not his spouse, making her a victim as defined by the statute.

The question of Bryan's intent was a factual determination for the jury to decide. Once the jury has decided, an appellate court does not determine whether the evidence is incompatible with any reasonable hypothesis except guilt. Regardless of whether the evidence supports another theory of the events, an appellate court's function is to determine whether there is a basis in the evidence to support the jury's guilty verdict. *State v. Boone*, 277 Kan. 208, 217-18, 83 P.3d 195 (2004).

The jury found Bryan guilty of lewd and lascivious behavior, indicating its finding that he exposed himself in the presence of a child with the intent to arouse or gratify his sexual desires. There is a basis in the evidence to support the jury's verdict. Accordingly,

the elements of K.S.A. 2004 Supp. 21-3508(a)(2) have been met, and Bryan's conviction is upheld.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

LOCKETT, J., Retired, assigned.