COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


CHARLES TIMOTHY SADLER

OPINION BY
v.        Record No. 2660-06-2          JUDGE SAM W. COLEMAN III
                                        DECEMBER 27, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
John Richard Alderman, Judge

Bruce P. Ganey for appellant.

J. Robert Bryden, II, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Charles Timothy Sadler was convicted of taking indecent liberties with a minor while he

was in a custodial or supervisory relationship with her.  See Code § 18.2-370.1.  On appeal, Sadler

contends the evidence was insufficient to prove that at the time of the offense he was in either a

custodial or supervisory relationship with the victim.  Finding the evidence sufficient, we affirm

Sadler's conviction.

FACTS

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

The victim met Sadler when she was in the ninth grade and a member of her school's

junior varsity softball team.  Sadler was the head coach of the softball team, and the victim was a

member of the team for two years.

In the early months of 2006, Sadler was coaching a traveling girls softball team he had helped organize and the victim, then seventeen years old, was a member of the team. At that time, the victim's father and Sadler were also involved in a joint business venture. Sadler frequently socialized with the victim's father, his wife, and their family.

Without the knowledge of the victim's parents, the victim and Sadler had engaged in a number of late night telephone conversations. In one conversation Sadler told the victim he planned to divorce his wife and marry her when she finished high school. On February 4, 2006, while Sadler and the victim were at the Richmond Coliseum participating in a fundraising event for the travel softball team, Sadler kissed the victim.

Then, ten days later on February 14, 2006, which was Valentine's Day, the victim was at home after school and no other family members were present. Sadler arrived at her house, and presented Valentine's Day gifts and cards for her, her sister, and her stepmother. In the card to the victim, Sadler wrote that he "loved" her "more than anyone in this world," and thanked her for "making [him] want to love again." Sadler and the victim kissed for about five to ten minutes. While Sadler was kissing the victim, he rubbed her buttocks on the outside of her clothing, which is the basis for the indecent liberties conviction in this appeal.

The following weekend, Sadler, the victim, and her father traveled to Georgia with the team for a softball tournament. During the trip, the victim's father received a telephone call from his wife informing him that the victim's cellular telephone bill included daily telephone calls for several weeks from Sadler to the victim, often late at night. When the victim's father confronted Sadler with the information, Sadler acknowledged he was in love with the victim and intended to marry her after she turned eighteen and finished high school. The victim's father informed Sadler that his daughter would no longer be a member of Sadler's travel softball team.

Testifying in his own behalf, Sadler acknowledged he dropped off Valentine's Day cards and gifts at the victim's home at around noon on February 14, but denied that the alleged victim or anyone else was home. Sadler said he returned to his business and stayed there the remainder of the day. Sadler denied that he had kissed or touched the victim on the buttocks on February 14 as she testified. Sadler did testify that he loved the victim "like a daughter," but denied he ever told her he intended to marry her.

ANALYSIS

Code § 18.2-370.1(A)(vi), of which Sadler was convicted, provides in pertinent part:

> Any person 18 years of age or older who . . . maintains a
> custodial or supervisory relationship over a child under the
> age of 18 and is not legally married to such child and such
> child is not emancipated who, with lascivious intent,
> knowingly and intentionally . . . sexually abuses the child
> as defined in § 18.2-67.10(6), shall be guilty of a Class 6
> felony.

In determining whether the evidence was sufficient to sustain Sadler's conviction,

> "[w]e review questions of law, and mixed questions of law and
> fact, utilizing a de novo standard of review." Muhammad v.
> Commonwealth, 269 Va. 451, 479, 611 S.E.2d 537, 553 (2005). In
> reviewing the sufficiency of the evidence to sustain a conviction,
> "we determine whether the evidence, viewed in the light most
> favorable to the prevailing party, the Commonwealth, and the
> reasonable inferences fairly deducible from that evidence support
> each and every element of the charged offense." Haskins v.
> Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779
> (1999). We will affirm the conviction "unless it is plainly wrong
> or without evidence to support it." Shackleford v. Commonwealth,
> 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001).

Gilbert v. Commonwealth, 47 Va. App. 266, 270, 623 S.E.2d 428, 430 (2005).

Code § 18.2-370.1 requires proof of a "custodial or supervisory relationship" as a "predicate to finding guilt." Seibert v. Commonwealth, 22 Va. App. 40, 46, 467 S.E.2d 838, 841 (1996). Sadler argues that to violate the statute the perpetrator must "maintain" a custodial or supervisory relationship with the victim at the very time and place the incident took place. He

asserts that the Commonwealth's evidence, even if believed, shows that at the time and place of his contact with the victim on February 14, 2006, he had no "custodial or supervisory relationship" over the victim.

"The use of the disjunctive 'or' in the statute between the terms 'custodial' and 'supervisory' clearly indicates that proof of either a 'custodial' relationship or a 'supervisory' relationship, or both, will satisfy the statute's relationship requirement." Gilbert, 47 Va. App. at 271, 623 S.E.2d at 431. "Custody" has been generally defined as "[t]he care and control of a thing or person for inspection, preservation, or security." Black's Law Dictionary 412 (8th ed. 2004). "In interpreting Code § 18.2-370.1, the Virginia Courts have broadly construed the meaning of custody, going beyond legal custody, to include those with informal, temporary custody." Guda v. Commonwealth, 42 Va. App. 453, 458, 592 S.E.2d 748, 750 (2004).

In determining whether a defendant maintained a "supervisory" relationship over a victim pursuant to Code § 18.2-370.1, we have applied the ordinary meaning of "supervisor" as "'a person having authority delegated by an employer to hire, transfer, suspend, recall, promote, assign, or discharge another employee or to recommend such action,'" Gilbert, 47 Va. App. at 272, 623 S.E.2d at 431 (quoting Webster's Third New International Dictionary 2296 (1993)), or "as '[o]ne having authority over others; a manager or overseer' and 'any individual having authority to hire, transfer, suspend, lay off, recall, promote, discharge, discipline, and handle grievances of other employees, by exercising independent judgment.'" Id. (quoting Black's Law Dictionary 1479 (8th ed. 2004)). Thus, we found that a victim's employer, who co-owned and managed the store where the victim worked, maintained a supervisory relationship over the victim when the sexual abuse occurred. Id. at 273, 623 S.E.2d at 431.

Nonetheless, whether custodial, supervisory, or a combination of both, the relationship "required under Code § 18.2-370.1 is not limited to those situations where legal custody exists,"

- 4 -

but includes individuals who maintain "a temporary, custodial relationship over a child, such as, '[foster parents,] teachers, athletic instructors and baby-sitters.'" Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999) (quoting Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972)). "[O]ne may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility or court order." Snow v. Commonwealth, 33 Va. App. 766, 773, 537 S.E.2d 6, 10 (2000) (addressing custody in the context of Code § 18.2-371.1). "[A] custodial relationship arises when the supervising adult exercises care and control over the child, with the care including the 'responsibility for and the control of the child's safety and well being.'" Guda, 42 Va. App. at 459, 592 S.E.2d at 751 (quoting Krampen, 29 Va. App. at 168, 510 S.E.2d at 279).

The evidence proved that, at the time of the offense, Sadler held a position of trust with the victim and her family. Having coached the victim's high school softball team he was an authority figure who oversaw and supervised her athletic activities for two years, and as such he was in a position of trust from a young person's perspective. Moreover, Sadler had become a close friend of the victim's family and a business partner of the victim's father which would further influence the victim's parents to entrust Sadler with the victim's supervision.

In addition to the supervisory relationship, when a coach travels with a team the coach is entrusted with the care and custody of the players. Thus, the victim's parents occasionally entrusted Sadler with the victim's care and custody by permitting her to be a part of Sadler's traveling softball team. See id. at 460-61, 592 S.E.2d at 751.

The victim was involved in the activities of Sadler's softball team both before and after the Valentine's Day incident. Ten days earlier they both had attended and participated in a fundraising event at the Richmond Coliseum for the travel team. The weekend following the

- 5 -

incident, the victim traveled to Georgia with Sadler for a softball tournament. Accordingly, on February 14, 2006, Sadler maintained a custodial or supervisory relationship with the victim.

The thrust of Sadler's primary argument seems to be that in order to sustain a conviction under Code § 18.2-370.1, the wrongful conduct must occur during or in relation to the purpose of or activities associated with the custodial or supervisory relationship, in this case activities related to the traveling softball team, or at a location involving those activities. However, Code § 18.2-370.1 does not require proof of a direct nexus of any type between the custodial or supervisory relationship and the defendant's wrongful conduct. Where a statute is clear and unambiguous, "a court may look only to the words of the statute to determine its meaning." Hubbard v. Henrico Ltd. Partnership, 255 Va. 335, 339, 497 S.E.2d 335, 337 (1998). "We must . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." Barr v. Town & Country Properties, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990).

Code § 18.2-370.1 was designed to protect minors from sexual exploitation by adults who hold positions of trust or authority with regard to them. See Krampen, 29 Va. App. at 168, 510 S.E.2d at 278. Clearly, an established and ongoing relationship involving a minor's trust or respect for an adult extends beyond the specific circumstances, location, or activity in which the relationship was created. It is the betrayal of that relationship through sexual abuse, regardless of location or temporal connection to supervisory or custodial relationship, that Code § 18.2-370.1 proscribes. To construe the statute as Sadler suggests would exclude from punishment an adult who takes indecent liberties with a minor over whom he has established a custodial or supervisory capacity so long as the incident is not directly related to activities or in the location involving the ongoing relationship. If we were to place such a construction upon the statute, a teacher who has a sexual relationship with a student after the school year or away from

school property, or a pastor who sexually abuses a young parishioner away from the church or during times unrelated to church activities, would be beyond the reach of the statute. Although we strictly construe statutes in criminal cases, see <u>Armstrong v. Commonwealth</u>, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002), we will not interpret Code § 18.2-370.1 so narrowly as to defeat its obvious and intended scope. See <u>Moyer v. Commonwealth</u>, 33 Va. App. 8, 531 S.E.2d 580 (2000) (*en banc*) (affirming convictions pursuant to Code § 18.2-370.1 where a teacher repeatedly sexually abused a student and former student both at school and other locations).

CONCLUSION

The evidence proved beyond a reasonable doubt that when Sadler sexually abused the victim on February 14, 2006, he maintained a custodial or supervisory relationship over her as her athletic coach. Accordingly, the evidence was sufficient to sustain Sadler's conviction for violating Code § 18.2-370.1.

<u>Affirmed.</u>