COURT OF APPEALS OF VIRGINIA

Present:    Judges McClanahan, Elder and Senior Judge Fitzpatrick
Argued by teleconference


TODD KENDALL DUNNINGS

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0147-07-3             JUDGE JOHANNA L. FITZPATRICK
                                                     MARCH 4, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
                          Humes J. Franklin, Jr., Judge

            Michael J. Hallahan, II, for appellant.

            Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Todd Kendall Dunnings (appellant) contends the trial court erred in convicting him of

violating Code § 18.2-370.1 because the evidence was insufficient to prove that he exercised the

requisite custodial or supervisory relationship with the two victims.  We disagree and affirm

appellant's convictions.

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

        Appellant was convicted in a bench trial of two counts of taking indecent liberties with

two high school students, B.G. and D.M., who were under the age of eighteen.  At the time of the

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

offenses, B.G. and D.M. were students in Linda Batman's mathematics class. Appellant was Batman's classroom aide whose job was "to assist [her] and to keep order in the class."

The evidence established that from January 2005 until March 2005, appellant sent sexually explicit text messages to B.G. at times when she was not at school. He asked B.G. "to meet him places" outside of school hours. B.G. was at her home in the evening when the above-referenced messages were sent. On February 20, 2005, B.G. was at D.M.'s house when appellant sent text messages to both of them. While appellant sent sexually explicit messages to D.M.'s cell phone, B.G. received a message on her cell phone from appellant asking both girls to meet him. Appellant sent additional sexually explicit messages to B.G.'s home sometime after February 20, but before March 1, 2005. B.G. saved some of the text messages and later gave her cell phone to Detective Luzader who investigated the complaints.

D.M. was also in a math class in which appellant was an assistant. She received her first text message from appellant in mid-February 2005 when B.G. was at her house. The next evening, appellant sent another text message to D.M. and arranged to meet her at a bowling alley. D.M. met appellant and entered his car. He drove to a dark, secluded location, parked the car and touched D.M.'s leg, and asked D.M. to perform a sex act. D.M. moved his hand, and appellant returned her to a location near the bowling alley.

During his investigation, Luzader spoke with appellant, who initially said that he might have sent D.M. some "school-related messages." When Luzader showed the text messages to him, appellant stated that he was just resending to D.M. the text messages she sent him first.

<u>Custodial or Supervisory Relationship</u>[1]

Appellant argues that because the proposals to the victims were sent when they were away from school and "outside of school hours," he did not maintain the required custodial or supervisory relationship at the time of the communications.[2]

Code § 18.2-370.1(A) provides:

> Any person 18 years of age or older who, except as provided in § 18.2-370, maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally (i) proposes that any such child feel or fondle the sexual or genital parts of such person or that such person feel or handle the sexual or genital parts of the child; or (ii) proposes to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361; or (iii) exposes his or her sexual or genital parts to such child; or (iv) proposes that any such child expose his or her sexual or genital parts to such person; or (v) proposes to the child that the child engage in sexual intercourse, sodomy or fondling of sexual or genital parts with another person; or (vi) sexually abuses the child as defined in § 18.2-67.10(6), shall be guilty of a Class 6 felony.

In <u>Sadler v. Commonwealth</u>, 51 Va. App. 17, 654 S.E.2d 313 (2007), a factually similar case to this, we recently addressed whether the requisite custodial or supervisory relationship existed at the time a sexually-related act or proposal was made. The victim met Sadler when she was in the ninth grade and he was the coach of her school's junior varsity softball team. <u>Id.</u> at 20, 654 S.E.2d at 314. In 2006, the victim, then seventeen years old, was a member of a traveling girls softball team that Sadler organized and coached. <u>Id.</u> In February 2006, "while

---

[1] Appellant argued on brief that the language used in the messages did not constitute a proposal for any of the sexually related acts proscribed by Code § 18.2-370.1. This issue was neither specifically ruled on by the trial court nor encompassed in the question presented. Accordingly we do not address it in this appeal. <u>See</u> Rule 5A:18 and Rule 5A:20(c)

[2] This issue was raised and preserved at trial in the supplemental memorandum and ruled upon by the trial court in its January 31, 2006 opinion letter.

Sadler and the victim . . . participat[ed] in a fundraising event for the travel softball team, Sadler kissed the victim." Id. at 21, 654 S.E.2d at 314. Ten days later, Sadler went to the victim's house when no one but the victim was home. He kissed her, and "rubbed her buttocks on the outside of her clothing, which [wa]s the basis for the indecent liberties" conviction. Id.

Sadler argued "that to violate [Code § 18.2-370.1] the perpetrator must 'maintain' a custodial or supervisory relationship with the victim at the very time and place the incident took place." Id. at 22, 654 S.E.2d at 315. He asserted "that at the time and place of his contact with the victim . . . he had no 'custodial or supervisory relationship' over the victim." Id. "The thrust of Sadler's primary argument [was] that in order to sustain a conviction under Code § 18.2-370.1, the wrongful conduct must occur during or in relation to the purpose of or activities associated with the custodial or supervisory relationship, . . . or at a location involving these activities." Id. at 24-25, 654 S.E.2d at 316.

We disagreed and held that Code § 18.2-370.1 "does not require proof of a direct nexus of any type between the custodial or supervisory relationship and the defendant's wrongful conduct." Id. at 25, 654 S.E.2d at 316. In affirming Sadler's conviction, we explained:

> Code § 18.2-370.1 was designed to protect minors from sexual
> exploitation by adults who hold positions of trust or authority with
> regard to them. Clearly, an established and ongoing relationship
> involving a minor's trust or respect for an adult extends beyond the
> specific circumstances, location, or activity in which the
> relationship was created. It is the betrayal of that relationship
> through sexual abuse, regardless of location or temporal
> connection to supervisory or custodial relationship, that Code
> § 18.2-370.1 proscribes. To construe the statute as Sadler suggests
> would exclude from punishment an adult who takes indecent
> liberties with a minor over whom he has established a custodial or
> supervisory capacity so long as the incident is not directly related
> to activities or in the location involving the ongoing relationship.
> If we were to place such a construction upon the statute, a teacher
> who has a sexual relationship with a student after the school year
> or away from school property, or a pastor who sexually abuses a

- 4 -

young parishioner away from the church or during times unrelated
to church activities, would be beyond the reach of the statute.

Id. at 25, 654 S.E.2d at 316-17.

Applying the analysis employed in Sadler, appellant clearly maintained a supervisory or custodial relationship over the victims at the time of the proposals. He was a teacher's assistant in the victims' math class at the time he made the proposals. The fact that these proposals occurred when the victims were not on school property does not change the outcome.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.