COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Petty
Argued at Richmond, Virginia


NICHOLAI KOLESNIKOFF

                                                             OPINION BY
v.        Record No. 3202-06-4               CHIEF JUDGE WALTER S. FELTON, JR.
                                                             JULY 28, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

Peter D. Greenspun (Greenspun, Shapiro, Davis & Leary, P.C., on
briefs), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Following a bench trial, Nicholai Kolesnikoff ("appellant") was convicted of custodial

indecent liberties, in violation of Code § 18.2-370.1.  On appeal, he contends the trial court erred

in denying his motion to dismiss the indictment or, in the alternative, to remand the case to the

juvenile and domestic relations district court for a preliminary hearing.  Appellant also contends

the trial court erred in denying his motion to strike the Commonwealth's evidence as insufficient

to support his conviction of custodial indecent liberties.  For the following reasons, we affirm the

judgment of the trial court.

I.  BACKGROUND

On appeal, "[w]here the issue is whether the evidence is sufficient, we view the evidence

in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly

deducible therefrom."  Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731

(1995).  "The credibility of the witnesses and the weight accorded the evidence are matters solely

for the fact finder who has the opportunity to see and hear that evidence as it is presented." Id. at 138, 455 S.E.2d at 732.

The evidence proved that on July 18, 2005, V., a fifteen-year-old boy, was visiting appellant's home. V. had known appellant, who was fifty-eight years old at the time, for about four years and had spent several vacations with appellant's family. Earlier that evening appellant received a call from V.'s father requesting that he send V. home for dinner. Appellant found V. in the house and sent him home. V. returned, and he and appellant's son played a computer game in appellant's son's bedroom, as they typically did "four or five times a week." Sometime after 8:30 p.m. that evening, appellant entered his son's bedroom. The two boys attempted to teach appellant how to play the computer game. After about two hours, appellant told both his son and V. to "go to bed." V. spent the night at appellant's house once or twice a week, and appellant "usually told [V. and appellant's son] when [they] should go to bed."[1] V. slept on the futon, as he normally did when he spent the night at appellant's house. Appellant's son slept in his own bed. Sometime later that evening, V. asked appellant to give him a massage. V. had previously received "[a] lot" of massages from appellant.

Appellant began rubbing V.'s back while they watched a movie. V. was wearing underwear and sport shorts but no shirt. After about ten minutes, appellant asked V. to "flip over" onto his back so that appellant could rub his neck. V. was unable to fall asleep while appellant was rubbing his neck, but appellant "kept on checking to see if [he] was awake." After rubbing V.'s neck for a while, appellant "pulled the front part of [V.'s] pants down and was looking at [V.'s] penis." Appellant then began touching the tip of V.'s penis and continued doing so for about two minutes. When V. moved his leg, appellant quickly returned to massaging his chest. A few

---

[1] V. received permission from his parents to spend the night at appellant's house on previous occasions.

minutes later, appellant again reached his hand inside V.'s shorts and started "playing with" V.'s erect penis. He continued for about three minutes. V. then rolled onto his side away from appellant, and appellant quickly started massaging his back. Appellant put his hands down V.'s shorts a third time, "rubbing" V.'s penis for four to five minutes. V. then rolled all the way over onto his stomach, and appellant left the room. Neither appellant, V., nor appellant's son, who appeared to be sleeping, said anything during the incident. As soon as appellant left the room, V. quickly gathered his effects, ran to his house next door, and told his father what had happened.

At trial, appellant testified that he was aware that V. was not allowed to play the computer game the boys were playing on the night in question and was concerned about the effect the game was having on both boys. He told the trial court that he noticed that V. had developed an erection during the massage, and that he lifted up V.'s shorts to look at his erect penis out of "curiosity." He testified that he briefly touched V.'s penis out of "some sort of a morbid curiosity" but quickly removed his hand. He testified that when he saw it was still exposed, he "was getting . . . partial instinctive messages that were guiding [him] at this point." He also testified that he got some massage oil off V.'s back and touched V.'s penis again for a few seconds. Appellant told the trial court that upon reflection he realized that, at the time he touched V.'s penis, the movie, Caddyshack (Orion Pictures 1980), was playing a scene with a topless woman. He testified that what he did was "incredibly stupid" and that he did not "know why [he] did it."

## II. ANALYSIS

### A. Preliminary Hearing

Appellant was tried on a direct indictment charging that he committed custodial indecent liberties on V., a child under eighteen years of age.

Appellant contends the trial court erred in denying his motion to dismiss the indictment or, in the alternative, to remand the case to the juvenile and domestic relations district court for a

preliminary hearing. He asserts that he was initially arrested on a felony arrest warrant charging that he committed custodial indecent liberties on V. Appellant further asserts that, on the Commonwealth's motion, that charge was *nolle prosequied* by the juvenile and domestic relations district court, over his objection that "the Commonwealth failed to show good cause" to justify the *nolle prosequi*.[2]

We find no error in the trial court's denying appellant's motion to dismiss the indictment. This Court recently decided <u>Wright v. Commonwealth</u>, 52 Va. App. 690, 667 S.E.2d 787 (2008) (en banc).[3] There, we held that "the circuit court is without subject matter jurisdiction to conduct an appellate review of the district court's order granting a motion for *nolle prosequi* and therefore cannot reverse that court's order." <u>Id.</u> at 705, 667 S.E.2d at 794. Appellant "was not entitled to have the circuit court review the district court's discretionary decision and grant [his] requested remedy of either having the case remanded to the district court for preliminary hearing or having the subsequent indictment[] dismissed." <u>Id.</u> at 707, 667 S.E.2d at 795. Accordingly, the trial court did not err in refusing to do so.

Appellant also argues, for the first time on appeal, that the circuit court lacked jurisdiction to hear the charge against him without first having a preliminary hearing in the juvenile and domestic relations district court. In his brief on appeal, he asserts that Code § 16.1-241 "vests the juvenile and domestic relations district court with original and exclusive jurisdiction to conduct a preliminary hearing where the charge involves a juvenile victim." Rule 5A:18 provides, "No ruling of the trial court . . . will be considered as a basis for reversal

---

[2] The record on appeal does not contain a felony arrest warrant showing appellant's arrest nor any document from the juvenile and domestic relations district court reflecting a *nolle prosequi* of a felony warrant charging appellant with the offense that is the subject of this appeal.

[3] The Supreme Court refused Wright's appeal from that decision of this Court. <u>Wright v. Commonwealth</u>, No. 082355 (Va. Feb. 13, 2009); <u>Wright v. Commonwealth</u>, No. 082355 (Va. Apr. 24, 2009) (petition for rehearing refused).

unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." This Court "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc). Appellant did not request that we invoke the ends of justice exception to Rule 5A:18, and "[t]his Court will not consider, *sua sponte*, an ends-of-justice argument under Rule 5A:18." Widdifield v. Commonwealth, 43 Va. App. 559, 564, 600 S.E.2d 159, 162 (2004) (en banc).

## B. Custodial Indecent Liberties

Appellant contends the trial court erred in denying his motion to strike the Commonwealth's evidence, at the conclusion of all the evidence, as insufficient to prove that he committed custodial indecent liberties on V. in violation of Code § 18.2-370.1.

Code § 18.2-370.1 provides, in pertinent part, "Any person 18 years of age or older who . . . maintains a custodial or supervisory relationship over a child under the age of 18 . . . who, with lascivious intent, knowingly and intentionally . . . sexually abuses the child as defined in [Code] § 18.2-67.10(6), shall be guilty of a Class 6 felony." Code § 18.2-67.10(6) provides, "'Sexual abuse' means an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts . . . ."

### 1. Custodial or Supervisory Relationship

Appellant argues that the evidence presented at trial was insufficient to prove that he exercised a custodial or supervisory relationship over V., a minor, at the time of the admitted touching.

- 5 -

"Code § 18.2-370.1 was designed to protect minors from sexual exploitation by adults who hold positions of trust or authority with regard to them." Sadler v. Commonwealth, 51 Va. App. 17, 25, 654 S.E.2d 313, 316 (2007) (citing Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999)), aff'd, 276 Va. 762, 667 S.E.2d 783 (2008). "Code § 18.2-370.1 requires proof of a 'custodial or supervisory relationship' as a 'predicate to finding guilt.'" Id. at 22, 654 S.E.2d at 315 (quoting Seibert v. Commonwealth, 22 Va. App. 40, 46, 467 S.E.2d 838, 841 (1996)). "Whether such a relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis." Sadler v. Commonwealth, 276 Va. 762, 765, 667 S.E.2d 783, 785 (2008).

"In interpreting Code § 18.2-370.1, the Virginia Courts have broadly construed the meaning of custody, going beyond legal custody, to include those with informal, temporary custody." Guda v. Commonwealth, 42 Va. App. 453, 458, 592 S.E.2d 748, 750 (2004). We have held that "the 'custodial or supervisory relationship' required under Code § 18.2-370.1 . . . includes those individuals eighteen years or older who have a temporary, custodial relationship with a child, such as, 'teachers, athletic instructors and baby-sitters.'" Krampen, 29 Va. App. at 168, 510 S.E.2d at 278 (quoting Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972)). "The child in each instance has been entrusted to the care and control of the supervising adult." Id. Moreover:

> Code § 18.2-370.1 does not require the specific entrustment of the child to the care of the adult to create a custodial or supervisory relationship. . . . [A] custodial relationship arises when the supervising adult exercises care and control over the child, with the care including the "responsibility for and the control of the child's safety and well being."

Guda, 42 Va. App. at 459, 592 S.E.2d at 751 (quoting Krampen, 29 Va. App. at 168, 510 S.E.2d at 279).

Here, the record shows that a longstanding relationship between appellant and V.'s family existed. V. frequently spent the night at appellant's house and accompanied appellant's

- 6 -

family on several vacations.  On the night in question, appellant was aware of V.'s presence in the home.  He testified that he was concerned about a video game's effect on both boys, intervening as he saw fit.  Appellant asserted authority over V. and, likewise, his own son, telling both boys to "go to bed."  Appellant acted "in the nature of a baby-sitter, *i.e.*, one entrusted with the care of the child for a limited period of time."  Krampen, 29 Va. App. at 168, 510 S.E.2d at 279.  Accordingly, we find no error in the trial court's finding that appellant "maintain[ed] a custodial or supervisory relationship" over V.  Code § 18.2-370.1.

## 2.  Lascivious Intent

Appellant also argues that the evidence was insufficient to prove that he acted with lascivious intent, asserting that "the trial court improperly placed upon [him], the burden to disprove a lascivious intent at the time of the touching."

"'Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact.'" Holley v. Commonwealth, 38 Va. App. 158, 165, 562 S.E.2d 351, 354-55 (2002) (quoting Summerlin v. Commonwealth, 37 Va. App. 288, 297, 557 S.E.2d 731, 736 (2002)).  "Intent may be shown by a person's conduct and by his statements."  Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989).

"The mental state required to support [a] conviction[] [under Code § 18.2-370.1] is one of lasciviousness."  Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (en banc).  We have consistently defined "lascivious" to mean "'a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite.'"  Id. (quoting McKeon v. Commonwealth, 211 Va. 24, 27, 175 S.E.2d 282, 284 (1970) (under former Code § 18.1-214)); Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005) (under Code § 18.2-370); Pedersen v. Richmond, 219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979) (under

Richmond City Code § 22-34.1); Asa v. Commonwealth, 17 Va. App. 714, 718, 441 S.E.2d 26, 29 (1994) (synonymous with "lewd" under former Code § 18.2-374.1); Frantz v. Commonwealth, 9 Va. App. 348, 353, 388 S.E.2d 273, 276 (1990) (under former Code § 18.2-370).

Appellant asserts that to prove lascivious intent the Commonwealth must prove at least one of the four factors the Supreme Court delineated in McKeon, to wit: "that the defendant was sexually aroused; that he made any gestures toward himself or to [the victim]; that he made any improper remarks to [the victim]; or that he asked [the victim] to do anything wrong." 211 Va. at 27, 175 S.E.2d at 284. Appellant's reliance on McKeon, as well as Viney, Campbell v. Commonwealth, 227 Va. 196, 313 S.E.2d 402 (1984), and Breeding v. Commonwealth, 213 Va. 344, 192 S.E.2d 807 (1972), is misplaced. McKeon, as well as the other cases relied on by appellant, involved proof of lascivious intent where the accused was charged with indecent exposure, not sexual abuse of a child as is the case before us.[4]

The record shows that, while massaging V.'s back and neck, appellant checked to see if V. was asleep several times over a period of thirty minutes. During that time, appellant pulled V.'s shorts down to see his penis. He then fondled V.'s penis. Only after appellant first touched it did it become erect, at which point he touched it two more times, "rubbing" it on the third occasion. Appellant admitted at trial that he touched V.'s erect penis out of "some sort of a morbid curiosity."

"'[W]hether the required intent exists is generally a question for the trier of fact.'" Crawley v. Commonwealth, 25 Va. App. 768, 773, 492 S.E.2d 503, 505 (1997) (quoting Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977)) (alteration in original). The "reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established

---

[4] Cf. Mason v. Commonwealth, 49 Va. App. 39, 50, 636 S.E.2d 480, 485 (2006) ("[Supreme] Court has not held that proof of one of the four [McKeon] factors is a prerequisite to a finding of lascivious intent").

guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). It asks whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Jackson, 443 U.S. at 319); see also Viney, 269 Va. at 299, 609 S.E.2d at 28 ("The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is 'plainly wrong or without evidence to support it.'" (quoting Code § 8.01-680)).

The trial court specifically found "from the testimony, . . . besides the touching, there was some manipulating of [V.'s] sexual organ." It also found appellant's "own admission [to] three different touchings of a fifteen-year-old's sexual organ" to be significant in finding appellant acted with lascivious intent, as well as appellant's admission that he had a "morbid curiosity" to touch V.'s penis in an erect state. The trial court stated, "I'm entitled to draw reasonable inferences from the evidence that was provided by both sides here, and frankly I think lascivious intent is the most reasonable inference to be drawn from the evidence that I've heard." We conclude that the trial court did not err in finding that appellant acted with lascivious intent. See Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 ("'responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting Jackson, 443 U.S. at 319)). From the record on appeal, we find no basis to support appellant's argument that the trial court erred by shifting the burden of disproving lascivious intent to him.

We conclude that the trial court did not err in finding the evidence presented at trial, together with reasonable inferences drawn therefrom, sufficient to prove that appellant "knowingly and intentionally . . . sexually abuse[d]" V. "with lascivious intent." Code § 18.2-370.1.

## III. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction of custodial indecent liberties in violation of Code § 18.2-370.1.

<u>Affirmed.</u>
