COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Kelsey and Huff
Argued at Chesapeake, Virginia


DAVID LORENZO NICHOLSON
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0042-11-1                    JUDGE D. ARTHUR KELSEY
                                                      DECEMBER 20, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

Kimberly Enderson Hensley, Assistant Public Defender (Office of
the Public Defender, on brief), for appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


The trial court convicted David Lorenzo Nicholson of violating Code § 18.2-370.1 by

taking indecent liberties with a child while in a custodial relationship.  On appeal, Nicholson

claims (i) the evidence failed as a matter of law to prove his guilt, and (ii) the trial court abused

its discretion by revoking an unrelated suspended sentence because of his new conviction and by

running the sentences consecutively.  Disagreeing with both assertions, we affirm.

I.

When presented with a sufficiency challenge on appeal, we review the evidence in the

"light most favorable" to the Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578

S.E.2d 781, 786 (2003).  This principle requires us to "discard the evidence of the accused in

conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

In addition, our appellate review "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, "an appellate court must consider all the evidence admitted at trial that is contained in the record." Id. (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586); see also Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010).

Framed by these principles, the record shows that on May 22, 2010, Nicholson spent time with his next-door neighbor, his neighbor's five children, and her live-in friend. They traveled to a park and later, Nicholson, the neighbor, and the children returned to the neighbor's home. Before leaving her home again, the neighbor asked Nicholson to "sit in the house with her children" until her friend returned to the residence. App. at 53. Nicholson agreed to do so and, after the neighbor left, Nicholson asked the children to go outside. The neighbor's thirteen-year-old son, however, went to an upstairs bedroom.

Nicholson entered the bedroom and asked the boy if he liked "dirty movies" and whether he preferred "girl on girl or boy on boy." Id. at 23. The boy sat in a chair beside the bed while Nicholson sat on the bed. Nicholson rose from the bed and touched the boy's testicles on top of his clothing. Pushing Nicholson away, the boy said he did not "do that stuff." Id. at 24-25. Disregarding the rebuff, Nicholson again touched the boy's testicles over his clothes.

When the live-in friend returned home, she found Nicholson in the kitchen cooking dinner for the children. The boy was outside. The boy later came inside and informed the friend what Nicholson had done. The friend then confronted Nicholson with the accusation and directly asked if he had "touched" the boy. Id. at 44. Immediately after ordering Nicholson to

- 2 -

leave the house, the friend contacted the police.  When questioned by police, Nicholson's initial response was that he never went into the bedroom with the boy.  Nicholson also explained that he "might have touched" the boy inadvertently while fixing his skateboard, but not in his "private part."  Id. at 82.

At trial, Nicholson testified on his own behalf.  Admitting he had previously been convicted of "five or six" felonies, or "something like that," as well as a few misdemeanors, Nicholson claimed he never touched the boy's testicles.  Id. at 78-79.  He admitted going to the bedroom where the boy was alone playing a video game.  Nicholson also conceded that, in his earlier police interview, he had denied ever going into the bedroom.

Sitting as factfinder, the trial court found the boy's testimony credible and rejected Nicholson's testimony as not credible.  The court convicted Nicholson of taking indecent liberties with a child while in a custodial relationship, in violation of Code § 18.2-370.1.  Based upon this new conviction, the court revoked a suspended felony sentence imposed in 2007.  The court then resuspended a portion of the earlier sentence and ran the two sentences consecutively.

II.

A.  SUFFICIENCY OF THE EVIDENCE

We examine the trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006).  In a bench trial, a trial judge's "major role is the determination of fact, and with experience in fulfilling that role comes expertise."  Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004) (citation omitted).  On appeal, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979));

see also Cavazos v. Smith, 565 U.S. ___, 2011 U.S. LEXIS 7603, at *1 (2011) (reaffirming Jackson standard). "This deferential standard of review applies not only to the historical facts themselves, but the inferences from those facts as well. Thus, a factfinder may draw reasonable inferences from basic facts to ultimate facts, unless doing so would push into the realm of *non sequitur*." McEachern v. Commonwealth, 52 Va. App. 679, 684 n.2, 667 S.E.2d 343, 345 n.2 (2008) (citation and internal quotation marks omitted).

On appeal, Nicholson does not challenge the sufficiency of the evidence proving he touched the boy's testicles. Instead, Nicholson argues that insufficient evidence proved he did so while in a "custodial or supervisory relationship" and with "lascivious intent" as required by Code § 18.2-370.1. We disagree.

The General Assembly enacted Code § 18.2-370.1 "to protect minors from sexual exploitation by adults who hold positions of trust or authority with regard to them." Sadler v. Commonwealth, 51 Va. App. 17, 25, 654 S.E.2d 313, 316 (2007) (citing Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999)), aff'd, 276 Va. 762, 667 S.E.2d 783 (2008). "Code § 18.2-370.1 requires proof of a 'custodial or supervisory relationship' as a 'predicate to finding guilt.'" Id. at 22, 654 S.E.2d at 315 (quoting Seibert v. Commonwealth, 22 Va. App. 40, 46, 467 S.E.2d 838, 841 (1996)). "Whether such a relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis." Sadler v. Commonwealth, 276 Va. 762, 765, 667 S.E.2d 783, 785 (2008).

In applying Code § 18.2-370.1, we "have broadly construed the meaning of custody, going beyond legal custody, to include those with informal, temporary custody." Guda v. Commonwealth, 42 Va. App. 453, 458, 592 S.E.2d 748, 750 (2004). A "custodial or supervisory relationship" includes adults who "have a temporary, custodial relationship with a child, such as, 'teachers, athletic instructors and baby-sitters.'" Krampen, 29 Va. App. at 168, 510 S.E.2d at

278 (quoting Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972)). We have emphasized that "Code § 18.2-370.1 does not require the *specific* entrustment of the child" but instead requires only a showing that the defendant exercised "care and control over the child, with the care including the 'responsibility for and the control of the child's safety and well being.'" Kolesnikoff v. Commonwealth, 54 Va. App. 396, 404, 679 S.E.2d 559, 563 (2009) (emphasis added) (quoting Guda, 42 Va. App. at 459, 592 S.E.2d at 751; Krampen, 29 Va. App. at 168, 510 S.E.2d at 279).

In this case, a rational factfinder could conclude beyond a reasonable doubt that Nicholson committed the offense while in a supervisory or custodial relationship with the thirteen-year-old boy. The boy's mother asked Nicholson, her next-door neighbor, to supervise her minor children while she was away from her home. Nicholson implicitly agreed to do so and remained at the house until the mother's live-in friend returned. Nicholson exercised adult supervision over the children by ordering all of them, including the victim, to play outside, as well as by cooking dinner for them. These facts alone amply support the trial court's conclusion that Nicholson acted "in the nature of a baby-sitter, *i.e.*, one entrusted with the care of the child for a limited period of time." Krampen, 29 Va. App. at 168, 510 S.E.2d at 279.

Nicholson also contends the evidence did not prove he touched the boy's testicles with lascivious intent. Like the trial court, we find this assertion meritless.

Under settled principles, *mens rea* — the offender's state of mind — "may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact.'" Holley v. Commonwealth, 38 Va. App. 158, 165, 562 S.E.2d 351, 354-55 (2002) (quoting Summerlin v. Commonwealth, 37 Va. App. 288, 297, 557 S.E.2d 731, 736 (2002)). A "lascivious" state of mind under Code § 18.2-370.1 means "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of

inciting sexual desire and appetite." Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d

580, 590 (2000) (*en banc*) (quoting McKeon v. Commonwealth, 211 Va. 24, 27, 175 S.E.2d 282,

284 (1970) (referring to lascivious intent under former Code § 18.1-214)).

In this case, a rational factfinder could infer from the circumstances that Nicholson

touched the boy's testicles with a lascivious state of mind. The touching occurred while the boy

was alone with Nicholson in a bedroom. Before touching the boy, Nicholson asked him if he

enjoyed pornographic movies and specifically inquired about homosexual pornography. Even

after the boy pushed Nicholson away, indicating he objected to the touching, Nicholson

responded by again touching the boy's testicles. When questioned by police prior to trial,

Nicholson initially claimed he did not go into the bedroom but, when testifying at trial, admitted

that he did.

At trial, Nicholson — a convicted serial felon[1] — repeated his earlier story that he "might

have touched" the boy while fixing his skateboard, but not in his "private part." App. at 78-82.

Sitting as factfinder, however, the trial court "was at liberty to discount [defendant's] self-serving

statements as little more than lying to 'conceal his guilt,'" Armstead v. Commonwealth, 56

Va. App. 569, 581, 695 S.E.2d 561, 567 (2010) (quoting Coleman v. Commonwealth, 52

Va. App. 19, 25, 660 S.E.2d 687, 690 (2008)), and "could treat such prevarications as 'affirmative

evidence of guilt,'" id. (quoting indirectly Wright v. West, 505 U.S. 277, 296 (1992)).[2] "This

---

[1] See Code § 19.2-269 (providing "the fact of conviction" may serve to impeach a felon's testimony); see also Boyd-Graves Conference, A Guide to Evidence in Virginia § 609(a), at 68 (2011).

[2] See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (recognizing "general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'" (quoting Wright, 505 U.S. at 296)); Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004); Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004); Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002); Thomas v. Commonwealth, 44 Va. App. 741, 755 n.5, 607 S.E.2d 738, 744 n.5, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005); Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003).

principle naturally follows from the broader observation that 'whenever a witness testifies, his or her credibility becomes an issue.'" Id. (quoting Hughes v. Commonwealth, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002)).

## B. REVOCATION OF SUSPENDED SENTENCE

Nicholson also contends the trial court abused its discretion by revoking his suspended sentence on an unrelated felony conviction and running the sentences consecutively. We conclude the trial court erred in neither respect.

The suspension of a criminal sentence "represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" Price v. Commonwealth, 51 Va. App. 443, 448, 658 S.E.2d 700, 703 (2008) (citation omitted); see Coffey v. Commonwealth, 209 Va. 760, 762, 167 S.E.2d 343, 344 (1969) (discussing the "rules relating to suspended sentences, by the grace of which he was given the suspension in the first instance"). Because a suspended sentence provides a convict with both the incentive and the opportunity to "repent and reform," Coffey, 209 Va. at 762, 167 S.E.2d at 345 (citation omitted); Holden v. Commonwealth, 26 Va. App. 403, 409, 494 S.E.2d 892, 895 (1998) (citation omitted), it presupposes he will not squander that opportunity by committing new criminal offenses.

Upon revoking a suspended sentence, the trial court reacquires the same discretionary prerogatives it had at the original sentencing hearing.[3] By statute, all criminal sentences presumptively run consecutively. "When any person is convicted of two or more offenses, and sentenced to confinement, such sentences shall not run concurrently, unless expressly ordered by

___

[3] When the trial court revokes a suspended sentence, the "original sentence" is thereby placed "in full force and effect." Code § 19.2-306(C). At that point, the "court may again suspend all or any part of this sentence and may place the defendant upon terms and conditions or probation." Id.; see Commonwealth v. Payne, No. 022489 (Va. July 11, 2003) (affirming "discretionary refusal to suspend any portion of the reinstated sentences" since appellant had squandered the "leniency" he received "on those original charges").

the court." Code § 19.2-308. To be sure, the "general rule in Virginia, both before we had a statute on the subject and since, is that sentences run consecutively and not concurrently." Hudson v. Youell, 179 Va. 442, 451, 19 S.E.2d 705, 709 (1942). While a trial court has the "discretion" to order concurrent sentences, Wood v. Commonwealth, 12 Va. App. 1257, 1259, 408 S.E.2d 568, 569 (1991), it must be circumspect in doing so given the statutory preference for consecutive sentencing.

What is more, Virginia law sharply limits appellate review of sentencing decisions. Absent a claim that the trial court based a sentence on facially unlawful considerations, when "a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." Alston v. Commonwealth, 274 Va. 759, 771-72, 652 S.E.2d 456, 463 (2007) (quoting Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977)).[4] It necessarily follows that multiple sentences running consecutively — assuming each is within the applicable statutory range — cannot be challenged collectively as an abuse of discretion any more than they could individually. See Williams v. Commonwealth, 270 Va. 580, 584, 621 S.E.2d 98, 100 (2005) (calculating "the length of a permitted sentence" on multiple convictions by summing the maximum five-year terms that "could have been imposed" for each of the "offenses for which the defendant was convicted").

In this case, Nicholson violated the most basic assumption underlying his suspended sentence by committing a new criminal offense. He thereby "forfeited" the "conditional

---

[4] See also Williams v. Commonwealth, 270 Va. 580, 584, 621 S.E.2d 98, 100 (2005); Perry v. Commonwealth, 208 Va. 283, 289, 156 S.E.2d 566, 571 (1967); Scott v. Commonwealth, 58 Va. App. 35, 46-47, 707 S.E.2d 17, 23 (2011); Jett v. Commonwealth, 34 Va. App. 252, 256, 540 S.E.2d 511, 513 (2001); Runyon v. Commonwealth, 29 Va. App. 573, 577, 513 S.E.2d 872, 874 (1999); Valentine v. Commonwealth, 18 Va. App. 334, 339, 443 S.E.2d 445, 448 (1994); Hudson v. Commonwealth, 10 Va. App. 158, 160-61, 390 S.E.2d 509, 510 (1990).

freedom" inherent in the court's earlier decision to suspend a portion of his sentence. <u>Coffey</u>, 209 Va. at 764, 167 S.E.2d at 346. Nicholson does not claim the trial court based either his sentence or his revocation on facially unlawful considerations. Nor does he claim either sentence, standing alone, exceeded its applicable statutory limit. As a matter of law, therefore, the trial court could not have abused its discretion by imposing the statutorily authorized sentences consecutively.

III.

In sum, the evidence amply supports Nicholson's conviction for taking indecent liberties with a child while in a custodial relationship, in violation of Code § 18.2-370.1. We also find no merit in Nicholson's challenge to the trial court's decision to revoke his prior suspended sentence and to run the sentences consecutively.

<u>Affirmed.</u>