UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley
Argued at Fredericksburg, Virginia

OSCAR A. ROGRIQUEZ GRANDADOS, S/K/A
  OSCAR A. RODRIGUEZ GRANADOS

v.      Record No. 1241-16-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE JAMES W. HALEY, JR.
NOVEMBER 14, 2017

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Mark J. Yeager for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Appellant was convicted of three charges of indecent liberties with a minor by a

custodian in violation of Code § 18.2-370.1(A)(i), (iii), and (vi). He argues on appeal that the

Commonwealth's evidence failed to establish he maintained a custodial or supervisory

relationship with the fifteen-year-old victim (J.A.V.) at the time of the offenses. We affirm the

convictions.

When the sufficiency of the evidence is challenged on appeal, this Court must "examine

all the evidence that tends to support the conviction." Hamilton v. Commonwealth, 279 Va. 94,

103, 688 S.E.2d 168, 173 (2010). Upon considering the evidence in the light most favorable to

the Commonwealth, the party that prevailed at trial, the Court must uphold the conviction unless

it is plainly wrong or without evidence to support it. Id. "If there is evidence to support the

conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence might differ from the conclusions reached by the finder of fact at trial."

Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998).

So viewed, the evidence established that J.A.V. came from Honduras to Alexandria to live with his uncle, Jose Ramos, in July of 2015.[1] In mid-July, appellant saw Ramos and J.A.V. washing Ramos's vehicle and drove by them several times before stopping to ask if Ramos was interested in selling the car. Ramos talked with appellant for several minutes about the car. He had not known appellant before that time. About a week later, appellant saw J.A.V. in a park and asked him for his phone number, which J.A.V. gave him because he thought appellant was a friend of his uncle. On July 24, 2015, appellant texted J.A.V. and offered to take him if he wanted to go to "the movies or Washington or to go see a female friend." J.A.V. did not accept appellant's offer.

Appellant contacted J.A.V. again on July 31, 2015, to ask if J.A.V. wanted to work with him in installing carpet. J.AV. initially declined to go, but appellant told him to ask his uncle. Ramos spoke to both his nephew and appellant on the phone. Ramos gave his permission for J.A.V. to go with appellant, but he asked them to wait until he came home so he could go with them. Appellant, however, left immediately with J.A.V., telling him they would "be right back." When Ramos arrived home to find that J.A.V. was not there, he phoned his nephew to ask where he was. J.A.V. said they were driving in appellant's truck. Ramos then spoke with appellant to get the address of the job site so he could meet them there. Appellant told him only the general vicinity and further said they were "just going to see something" and not to "worry" because they would return soon. Ramos replied, "that's fine," as J.A.V. was already with appellant.

After appellant and J.A.V. arrived at the apartment where the alleged carpet work was to be done, appellant showed J.A.V. some burned carpet that was close to the bathroom. The

---

[1] J.A.V.'s parents remained in Honduras, and J.A.V. considered Ramos to be his father.

apartment appeared to be vacant, but appellant had a key to enter. Appellant and J.A.V. went into the bedroom where appellant showed J.A.V. some pornographic videos on his cell phone and asked if J.A.V. had "been with a woman." Appellant pulled down his pants, exposing his penis, and began masturbating. He offered J.A.V. $100 if he would masturbate. J.A.V. pulled down his pants because he was afraid of appellant. Then appellant asked if he could touch J.A.V.'s penis and offered him more money. J.A.V. said "no," but appellant touched his penis anyway. J.A.V. went to the living room until appellant finished masturbating, and he then asked appellant to take him home. On the way to Ramos's house, appellant gave J.A.V. $100 and told him not to "mention anything" to his uncle. Ramos spoke briefly with appellant when he returned with J.A.V. Appellant said he wanted to take J.A.V. to work again. J.A.V. said he was "not going back."

Later that evening, J.A.V. told his uncle's wife what appellant had done to him, and she told Ramos, who then contacted a police detective he knew from the neighborhood. After police officers talked with J.A.V., they interviewed appellant. Appellant said Ramos had given him permission to take J.A.V. to the apartment to fix the carpet. Appellant initially denied J.A.V.'s allegations but then admitted he had sexually abused J.A.V.

Code § 18.2-370.1(A) provides, in part, that it is a Class 6 felony for an adult to take indecent liberties with a child under the age of eighteen, over whom the adult "maintains a custodial or supervisory relationship." "The purpose of the statute 'is to protect minors from adults who might exploit certain types of relationships.'" Linnon v. Commonwealth, 287 Va. 92, 98, 752 S.E.2d 822, 826 (2014) (quoting Sadler v. Commonwealth, 276 Va. 762, 765, 667 S.E.2d 783, 785 (2008)). The term "custodial relationship" in Code § 18.2-370.1 is not defined solely as "legal custody" and has been interpreted to include "one entrusted with the care of the child for a limited period of time." Krampen v. Commonwealth, 29 Va. App. 163, 167-68, 510 S.E.2d 276,

278-79 (1999) (rejecting claim that evidence of "informal part-time casual relationship" was insufficient for conviction). Whether a given relationship is "custodial or supervisory," turns on "whether the defendant 'had the responsibility for and control of the child's safety and well-being.'" Linnon, 287 Va. at 98, 752 S.E.2d at 826 (quoting Krampen, 29 Va. App. at 168, 510 S.E.2d at 278). Furthermore, "[w]hether such a relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis." Sadler, 276 Va. at 765, 667 S.E.2d at 785. "[Q]uestions of fact are binding on appeal unless 'plainly wrong.'" McGee v. Commonwealth, 25 Va. App. 193, 198 n.1, 487 S.E.2d 259, 261 n.1 (1997) (*en banc*).

Appellant argues no custodial relationship existed because he had no prior association with Ramos under which Ramos would have entrusted J.A.V. to appellant and the fact that Ramos had wanted to accompany appellant and J.A.V. showed Ramos did not trust appellant. We have held in prior cases, however, that a conviction under Code § 18.2-370.1(A) is not limited to "the specific entrustment of the child to the care of the adult" but also arises "when the supervising adult exercises care and control over the child." Guda v. Commonwealth, 42 Va. App. 453, 458, 592 S.E.2d 748, 750 (2004) (defendant was security officer at minor victim's school). A person "may become 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility." Id. (quoting Snow v. Commonwealth, 33 Va. App. 766, 773, 537 S.E.2d 6, 10 (2000)); see Linnon, 287 Va. at 96-98, 752 S.E.2d at 824-25 (rejecting defendant's argument that his "mere employment as a teacher" at the school the sixteen-year-old victim attended and his limited contact with her at school did not establish the requisite custodial relationship, where defendant's wife had invited the victim to their home and there was no evidence the victim's parents had given permission for her to go there); Kolesnikoff v. Commonwealth, 54 Va. App. 396, 404, 679 S.E.2d 559, 563 (2009) (holding defendant exercised responsibility and control over child who was staying

overnight at defendant's residence even though there was no agreement or formal arrangement between defendant and child's parents for child to spend the night).

The evidence in this case established that appellant had a custodial or supervisory relationship with J.A.V. because he had both explicit and implicit authority to direct or control J.A.V.'s actions. When J.AV. initially declined to go with appellant to learn to lay carpet, appellant told him to ask his uncle. Ramos gave permission for J.A.V. to go with appellant. Appellant then left immediately with J.A.V., ignoring Ramos's request that they not leave until he came home so he could go with them. Ramos telephoned J.A.V. after Ramos returned home and discovered his nephew was not there. J.A.V. gave the phone to appellant to tell Ramos their location, as J.A.V. was not familiar with the area. Appellant assured Ramos he did not need to be concerned about J.A.V., as they were going to look at the carpet installation job and would return soon. Once appellant voluntarily took J.A.V. in his vehicle away from J.A.V.'s home, appellant, as the "only adult present," became responsible for J.A.V.'s care. Krampen, 29 Va. App. at 168, 510 S.E.2d at 278 (affirming defendant's conviction under Code § 18.2-370.1 where defendant, as "only adult present," was responsible for fifteen-year-old victim's safety and well-being when he drove her home from church).

Appellant's case is distinguished on its facts from this Court's recent decision in Hutton v. Commonwealth, 66 Va. App. 714, 791 S.E.2d 750 (2016), in which the Court held the evidence was not sufficient to establish that Hutton had a supervisory relationship with a fifteen-year-old neighbor who visited frequently in the home that Hutton, age thirty-nine, shared with his mother. During a four-month span, Hutton had sex with the girl five times, and she became pregnant. This Court reversed Hutton's conviction under Code § 18.2-370.1, holding that Hutton had "not exercised control over [victim] in any way uniquely related to her status as a

- 5 -

minor" and that "simply being in the presence of a child [does not] trigger a supervisory obligation." Hutton, 66 Va. App. at 726, 791 S.E.2d at 756.

Appellant, however, was not "simply . . . in the presence of" J.A.V. Appellant voluntarily obtained permission from Ramos to take J.A.V. in his vehicle to an undisclosed location under the premise that appellant was offering J.A.V. employment and would teach him to install carpet. When appellant returned J.A.V. to Ramos's residence, appellant said he wanted to take J.A.V. to work with him again. See Gilbert v. Commonwealth, 47 Va. App. 266, 272-73, 623 S.E.2d 428, 431 (2005) (holding supervisory relationship existed where defendant, as minor victim's employer, had authority to hire and fire employees, create their work schedules, and direct their duties). There was no evidence Hutton had demonstrated any "affirmative action establishing a supervisory relationship between [himself and the victim]." Hutton, 66 Va. App. at 726, 791 S.E.2d at 755. In Hutton, the nature of the relationship between Hutton and the victim was more of a peer-to-peer friendship, as they talked, watched television, and ate together. Id. at 716, 791 S.E.2d at 251. Here, however, appellant's attempt to befriend J.A.V. by proposing they go out together socially and the offer to teach J.A.V. a job skill evinced a predatory relationship in which opportunities arose to exploit J.A.V.

Other facts also give appellant's relationship with J.A.V. the custodial or supervisory overtones lacking in Hutton. There was no evidence in Hutton the victim's mother had asked Hutton to look after the girl, and the mother discouraged the girl from spending time at Hutton's home because the girl "did not need to be hanging out with a grown man. Id. at 717, 791 S.E.2d at 751. The victim in Hutton lived across the street from the defendant, id. at 718, 791 S.E.2d at 251, and could easily return to her own home whenever she wanted, or when her mother telephoned Hutton to ask that the girl return home. Once appellant took J.A.V. to the apartment, J.A.V. was dependent on appellant to return him to his uncle's house because J.A.V. could not

- 6 -

drive and was not familiar with the area. J.A.V. was alone with appellant, but in <u>Hutton</u>, the defendant's mother was often present when the victim visited the residence. <u>Id.</u> at 727, 791 S.E.2d at 756. The Court noted in <u>Hutton</u> that the "same acts" of hospitality shown to the victim "if taken on behalf of a young child, might indicate a supervisory relationship . . . ." <u>Id.</u> Although J.A.V. was not a young child, he was a foreigner who had been in this country only a short time and it was likely he spoke little, if any, English.[2]

The evidence in this case, viewed under the applicable standard, established that appellant had both express and implied power to direct or control the actions of J.A.V. Accordingly, we find the evidence was sufficient to prove appellant maintained a custodial or supervisory relationship over J.A.V. when appellant committed the sexual offenses.

For these reasons, we affirm the convictions.

<u>Affirmed.</u>

---

[2] J.A.V. testified at trial through an interpreter, and the text messages between J.A.V. and appellant, which were admitted as an exhibit, were in Spanish.